MORRIS, Respondent, vs. ELLIS and others, Appellants.

*March 30—April 28, 1936.*

For the appellants there was a brief by *Sanborn, Blake & Aberg* of Madison, *Glen H. Bell* of Madison, and *Ronald M. Adams* of Eagle River, and oral argument by *Mr. Bell.*

*Carlyle B. Wurster* of Merrill, and *Lewis G. Brown* of Lake Geneva, for the respondent.

WICKHEM, J.   On August 2, 1926, the board of the village of Eagle River adopted a resolution reciting that the state board of health had condemned the municipal water supply, declaring the necessity that wells be constructed and that acceptance of bids for the installation of wells be submitted to the electors.   On November 1, 1926, at a special meeting of the village board, plans and specifications for a water supply system were adopted.   At this time a notice to contractors for bids was approved.   On January 17, 1927, the village board adopted a resolution reciting the offer of Layne-Bowler Chicago Company to construct a well guaran-

teeing three hundred gallons of good potable water a minute with a one-hundred-thousand-gallon storage tank and other accessories of the water supply system according to the plans and specifications, to sell the same to the village of Eagle River for $30,971, and to accept payment in the form of mortgage certificates secured by trust deed on the plant. This resolution directed that a special election be called to vote upon the acceptance of the contract and the issuance of the mortgage certificates. The election was held on February 1, 1927, and the electors voted one hundred thirty-three to one hundred twenty-three to authorize the board to execute the contract. On June 3, 1927, the village board adopted an ordinance providing for the issuance and prescribing the form of the trust deed and of the mortgage certificates. Plaintiff is a holder of two of these certificates. Both the trust deed and the certificates recite on their face that,—

"No municipal liability is created hereby, and this certificate is not supported nor payable by direct taxation of said village."

On June 17, 1927, the contract between the village of Eagle River and the Layne-Bowler Chicago Company was executed. This contract recites the offer of the Layne-Bowler Chicago Company to construct the well-water system in accordance with the plans on file, and sets forth the jurisdictional facts (the resolutions, referendum, etc.). The village agrees to furnish land upon which to locate wells and right of way. On July 6, 1927, the village purchased and paid for in cash the land on which the well was finally located. The new water system was unsatisfactory, but after some changes were made and the well had been operated for nearly a year, the board adopted a resolution accepting the well and authorizing the delivery to the Layne-Bowler Chicago Company of the mortgage certificates. The well continued to give trouble during the years 1930, 1931, 1932, and 1933. In August, 1933, the board adopted a resolution that the village

borrow the necessary funds to insure a new well-supply system.

It is unnecessary to recite the procedures taken in accordance with this resolution. It suffices to state that on December 1, 1934, the village placed a new well in operation at a cost of $18,000. This well was connected to the Layne-Bowler standpipe and distributed through the original mains. The village is in default on all payments of principal and interest accruing on the mortgage certificates after July 1, 1932. The complaint asks declaratory relief as follows: (1) That it is the duty of the village of Eagle River to take all proper and necessary steps to insure that the mortgage-certificate redemption fund of its water utility is kept at a level sufficient to meet all maturing instalments of principal and interest on the outstanding mortgage certificates; (2) that it is the duty of the village to ask for an increase in rates to protect against a default in the payment of principal and interest accruing on all outstanding certificates; (3) that the additions, extensions, and improvements heretofore referred to are subject to the first lien of the trust deed as security for the protection of the mortgage-certificate holders; (4) that the entire water utility was intended to be and is covered by the lien of the trust deed for the benefit of the mortgage-certificate holders; and (5) for such other relief as may be lawful and proper in the premises.

The answer sets up facts claimed to show that the referendum was wholly invalid, and that consequently the Layne-Bowler Chicago Company contract, trust deed, and mortgage certificates are void. Defendant denies that the village has ever operated the well-water system and its old water system as one public utility, or that the Layne-Bowler system has become worn out or undesirable. It is alleged that in 1932 the public service commission of Wisconsin, at the instance and request of some of the owners of mortgage certificates, instituted an investigation of the accounting practices of the

Eagle River water and light commission; that the public service commission, after a hearing, entered an order which dealt with the accounting practices of this utility and the maintenance of the mortgage-certificate redemption fund; that in September, 1934, the defendant village brought an action in the circuit court for Dane county, Wisconsin, to review this order, and that this suit is pending. Judgment is demanded: (1) That the trust indenture and mortgage certificates be declared void; (2) in the alternative, that the complaint be dismissed in so far as it prays relief in connection with maintaining the mortgage redemption fund, or any application to the public service commission of Wisconsin in connection with matters of accounting or the revenues from the different branches or parts of the water utility of the village of Eagle River; (3) declaring that the trust indenture securing the mortgage certificates is a lien upon only the Layne-Bowler well-water system, and that the defendants have no duty or obligation to bring under the lien of said trust indenture the new well or property described heretofore. There is also an answer by the trustees of the trust deed asking for construction of the trust indenture, seeking dismissal of the action in so far as it deals with accounting practices of the Eagle River light and water commission and the maintenance of the mortgage-certificate redemption fund, and for instructions as trustee.

The judgment provided that the trust deed and certificates were valid; declared that the additions to the plant here involved are subject to the lien of the trust deed; adjudged that it was the duty of the village of Eagle River and the Eagle River light and water commission promptly to apply to the public service commission for an increase in rates, and take all other steps reasonably calculated to increase its revenues and decrease its operating expenses to the end that the utility might be able to meet all lawful charges and expenses, including principal and interest on the mortgage certificates as the same fall due. It was further adjudged that the issues in this

case are not the same as those presented before the public service commission, in which case appeal is pending to the circuit court for Dane county. It was further adjudged that the court reserves the right in this proceeding, upon proper application therefor, to make such further order, judgment, or mandate as may be necessary or proper to effectuate this judgment.

It is first contended that this is not a proper case 'for declaratory relief. As to the first and second requests for relief, it is the contention of defendant that there is no controversy over the obligation of the village to take proper steps to increase its revenues to meet the expenses of operation and the retirement of the certificates. It is claimed that nobody disputes this obligation, and that the only question is what the village and water commission must do. However, if this is true, no prejudice can result from the adjudication of this undisputed obligation, and if other justiciable questions were presented, this would furnish no ground for reversal.

The request that the court adjudicate that all additions, extensions, and improvements mentioned and described· in the complaint are subject to the first lien of the trust deed is claimed not to be within the Declaratory Judgments Act for the reasons that this depends upon a construction of the trust indenture, and that this controversy is not ripe for judicial determination. It is defendants' position that no declaratory judgment is necessary since all questions relating to the property covered by· the trust deed can be determined in a foreclosure action or other action taken upon the trust deed. The answer to this is expressly given in the opening paragraph of the act. Sec. 269.56 (1), Stats., reads in part:

"Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. . . ."

Neither is the fact that other relief is or could be asked material, although the fact that a conventional cause of action is alleged and proved might justify a court in omitting the

declaration and entering a judgment for such other relief as the facts warrant.

It is also intimated that plaintiff has here asked and received a mere construction of a writing (the trust deed) which does not involve "rights, status or other legal relations." The basis of this is the form of plaintiff's prayer for declaratory relief in this respect. The prayer reads:

"(3) That the additions, extensions and improvements mentioned and described in the complaint (Par. XIX), as well as any and all others of similar import hereinbefore or hereinafter added by the village of Eagle River to the well-water system, are subject to the first lien of the trust deed aforesaid as security for the protection of the mortgage certificate holders, and it is the duty of the defendants, by proper instrument promptly to include such additions, extensions and improvements into such trust deed for the protection of the mortgage certificate holders."

The objection is without substance. It is clear enough that plaintiff claims rights under the trust deed, and although cast in the form of a mere request for interpretation or construction, it is asking a declaration of them as well as the correlative duty of defendant. It is further objected that the court retained unauthorized jurisdiction to grant further relief. This portion of the judgment reads as follows:

"Adjudged further that the court reserves the right, in this proceeding, upon proper application therefor, to make such further order, judgment or mandate as may be necessary or proper to effectuate this judgment, or to afford complete relief to the plaintiff as outlined in the opinion, findings of fact, conclusions of law, and this judgment."

Sec. 269.56 (8), Stats., reads:

"*Supplemental Relief.* Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been

adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith."

The contention is that sec. 269.56 (8) does not authorize the retention by a court of any jurisdiction after entering a declaratory judgment. True, it does not, but it does not follow that a court may not retain jurisdiction to enter such subsequent orders as will make effective the declaratory relief. An action for declaratory relief is essentially equitable in character. *Rosenberg v. Whitefish Bay,* 199 Wis. 214, 225 N. W. 838. The power of a court of equity to retain jurisdiction to give complete and effectual relief is well established. Further than this, it is clear that the statute authorizes the granting of further relief upon petition, and the question whether a court should retain jurisdiction or merely await a proper petition would seem to be rather academic.

The intimation that the supplemental relief contemplated by the statute is limited to further declaratory relief cannot be sustained. It includes any relief essential to making effective the declaratory judgment entered by the court. See Borchard, Dec. Judg. p. 172; 11 Ind. Law Rev. 376.

Coming to the merits, it is first contended that the trust deed and certificates are void. It is claimed that the referendum ballot was fatally defective. Sec. 66.06 (8), Stats., requires a referendum before acquiring or constructing water plants. Sec. 6.23 (8) provides the form of ballot. It reads as follows:

"Whenever a proposed amendment to the constitution, or any measure or other question shall be submitted to a vote of the people, a concise statement of the nature thereof shall be printed in accordance with the act or resolution directing its submission upon a separate ballot provided for that purpose, and underneath the question as thus stated shall appear the words 'Yes' and 'No,' and after and to the right of each of said words there shall be a square. At the top of said ballots shall be printed in letters of not less than three-eighths of an inch in length the words: 'Official Referendum Ballot.'

Underneath said words, and in plain, legible type shall appear the following instructions to voters: 'If you desire to vote for any question, make a cross (✕) or other mark in the square after the word "Yes," underneath such question; if you desire to vote against any question make a cross (✕) or other mark in the square after the word "No," underneath such question.' This form of ballot shall be used at all elections at which questions are submitted to the people."

The ballot used for the 1927 referendum is claimed to be defective because it does not contain a "concise statement" of the question to be voted on, and that it was so framed that a "Yes" or "No" vote is equivocal and meaningless. The difficulty arises out of the fact that the resolution was set forth on the ballot. In part this read as follows:

"Resolved, that the village board of trustees hereby directs the village clerk to submit the question directing the village board to enter into a contract with said Layne-Bowler Chicago Company to purchase said water system at price and terms above stated to the electors of said village of Eagle River, for their approval or disapproval, and also authorize the proper officers to issue mortgage certificates which shall recite that they are secured by trust deed or mortgage upon such equipment and . . . to pay Layne-Bowler Chicago Company for such water plant under their contract from the proceeds of the sale of said mortgage certificates so issued. And that notice be given the statutory length of time prior to the balloting thereon, and the special election therefor."

The directions to voters read:

"If you desire to vote for the resolution below, make a cross (✕) or other mark in the square after the words, 'For the Resolution;' and if you desire to vote against the resolution, then make a cross (✕) or other mark in the square after the words 'Against the Resolution.' "

The ballot concluded:

For the Resolution.................. ☐
Against the Resolution............... ☐

It is literally true that an affirmative vote would merely indicate approval of a resolution which simply authorized a

referendum. However, we concur in the conclusion of the trial court that the objection to the form of ballot is hypercritical, and that its true import is obvious and not calculated to mislead a voter.

It is next contended that the construction contract is void because it was not let to the lowest bidder. Sec. 61.55, Stats. 1927, provides:

"All contracts for the performance of any work or the purchase of any materials, in any such village, exceeding five hundred dollars, shall be let by the village board to the lowest bidder in such manner as they may prescribe."

In *Strong v. Eagle River Layne-Bowler Chicago Company,* et al., the record of which was admitted into evidence here and which was tried in the circuit court, it was alleged by plaintiff that Layne-Bowler Chicago Company was the highest bidder, and that contrary to sec. 61.55, Stats., the board of trustees accepted the Layne-Bowler bid subject to ratification thereof by the electors. The complaint then recites the fact of the referendum and that the majority of the electors voted in favor of ratifying the resolution. Plaintiff therein sought to enjoin the execution of the contract on two grounds, one of which was that it had not been let to the lowest bidder. The trial court held that the electors had authorized the bid of the Layne-Bowler Chicago Company and that this authorization superseded the provisions of sec. 61.55, which the court held to be a mere limitation upon the powers of the trustees to bind the village by contract. It was held that the referendum superseded the statute, and gave a validity which the contract would not have had if the trustees had assumed to let to the highest bidder. Without expressing any opinion as to the correctness of this result or of the trial court's opinion, we are of the opinion that this question is *res adjudicata.* Both the village and Layne-Bowler Chicago Company were parties in the *Strong Case,* and the issue was the same as that sought to be litigated here. Plaintiff

holds her certificates through or from the Layne-Bowler Chicago Company, and since the village is precluded from objecting to the validity of the contract upon this ground as against Layne-Bowler, it seems clear to us that it may not raise the point as against plaintiff.

It is next contended that the trust deed and mortgage certificates created a municipal indebtedness in excess of the constitutional limit. It is conceded that the village was nearly up to its debt limit, and that if this transaction created a municipal indebtedness in the sum of $30,000 or any substantial part of this sum, it is void. The contention that the transaction did result in a new indebtedness exceeding the limit is based upon the fact that the village purchased for the sum of $700 two pieces of land which were to be used as the situs of the well. This property was paid for in cash. Since, however, it was included in the property incumbered by the trust deed, it is argued that it operates as security for the entire purchase price of the Layne-Bowler equipment and requires that the entire purchase price be considered a new and additional municipal indebtedness. It is urged that the case of *State ex rel. Morgan v. Portage,* 174 Wis. 588, 184 N. W. 376, is authority in support of this position. The *Morgan Case* recognized and applied a distinction theretofore held in previous cases and thus expressed in *Connor v. Marshfield,* 128 Wis. 280, at p. 292, 107 N. W. 639:

". . . The distinguishing element, as then defined, consisted in the fact that the city could not be coerced by the creditor of its grantor into applying to his claim either its general revenue or property owned by it at the time of the contract, but was free at its election to abandon the plan of acquiring or holding that which, prior to the contract, it did not own. . . ."

Defendants' contention cannot be sustained. The lots acquired by the village were only acquired in pursuance of an obligation imposed by the Layne-Bowler contract, and, when

they were acquired, became a part of the property and plant which the village agreed to buy. The contract did not obligate the village to pay any sum in discharge of the trust deed and certificates except out of revenues to be obtained from use of the unit of which the lots had become a part. As stated by the trial court, the result of the transaction was the same as if the Layne-Bowler Chicago Company had bought and paid for the lots and added $700 to the selling price of the water-supply system. No part of the property of the village owned and held at the time of the contract was incumbered by this transaction. The case is materially different from the *Morgan Case, supra,* where it was proposed to mortgage all of the municipal water works of the city of Portage to secure a debt for the purpose of making additions and improvements.

It is next contended that the new well is not covered by the trust agreement. It is said that the new well is not within the language either of the statute, trust deed, or mortgage certificates. Sec. 66.06, Stats. 1927, provides for the execution of a mortgage to secure mortgage certificates and specifies what the mortgage should cover.

Sec. 66.06 (9) (c) 3 "To secure the payment of principal and interest of such mortgage certificates, the chief executive and clerk shall execute to the purchaser thereof, or to a trustee selected by resolution or ordinance, a trust deed or mortgage upon such equipment and additions and improvements."

Following a description of the property affected by the lien of the trust deed, section sixth provides:

"The lien of this indenture upon the property herein described and upon the income from such plant, part or equipment thereof, as herein provided, shall be the only security which the holder of such mortgage certificates shall have, and no municipal liability shall be created by this trust deed, mortgage or indenture, or by the mortgage certificates issued hereunder."

It is the position of defendant that these provisions specifically describe the property mortgaged and limit the lien of the mortgage to the property therein described; that if the new well and mains were to be brought under the lien of the trust indenture, the property paid for by the municipality would become pledged as security for the mortgage indebtedness, and that this would create a municipal liability contrary to the provisions of the trust indenture and in violation of the provision of sec. 66.06 (9) (c) 3, 4, Stats. Any intent to do this is claimed to be repelled by section third of the trust indenture which provides:

"The said village further agrees to take care of and to preserve the said property . . . and further covenants that it will keep such mortgaged premises and properties in good order and repair and will not create or suffer to be created any mechanics,' laborers' or other liens, or charges whatsoever upon the mortgaged premises or any part thereof whereby the lien of this indenture might be impaired."

It is claimed that this obligation to keep the premises in good order and repair cannot operate to bring the new well and mains under the lien of the mortgage—that this is independent construction and not repair. By section ninth of the trust deed the village covenants and agrees that the indenture shall create a valid lien upon the plant and equipment above described, and, likewise, upon all further additions, extensions, or improvements of the plant. It is contended that the new well does not fall within the definition of further additions, extensions, or improvements of said plant, but is an entirely new and independent construction. Reliance is also had upon a portion of section ninth, which provides that the village may sell, exchange, or otherwise dispose of such parts of the property above described as may become old, worn out, used up, or undesirable, but that said village shall in such event renew the same or substitute therefor other property which in the judgment of the trustee is of equal or greater

value. With this provision as a basis, it is contended that the reference to additions, extensions, and improvements is limited to replacements or repairs. Defendants' argument is ingenious, but we are unable to agree with it. It is conceded that the Layne-Bowler well was permitted to fall into disrepair and deteriorate to the point where it was incapable of furnishing satisfactory water service. This was a plain violation of the village's covenant to keep the property in good order. Having so permitted the property to fall into a state of deterioration and inefficiency, the village exercised an option to replace the well and part of the equipment by another well and equipment connected with the old mains and designed to perform the same service theretofore performed by the discarded well and plant. As stated by the trial court, the village—

"put itself in poor condition to claim that this new well with the connecting mains do not constitute repairs, and additions and extensions or improvements of the plant covered by the trust deed."

The argument of defendant that the sixth section of the trust deed provides that the lien upon the property described shall be the only security which the holder of a mortgage certificate shall have is of little importance in view of the ninth provision which creates a valid lien upon additions, extensions, and improvements. The question is whether the new well falls within the definition of additions, extensions, or improvements. We conclude that it does for the reason that it is property added to the plant for the purpose of making good the deterioration in the Layne-Bowler equipment caused by failure of the village to repair this equipment. It performs the same function as the discarded equipment and has in fact become a part of the Layne-Bowler unit.

The next question is whether the agreement to make additions, extensions, or improvements falls within the condemnation of the *Morgan Case, supra,* in that it increases

municipal indebtedness beyond the debt limit. It is our conclusion that neither the statute nor the trust deed contemplate the creation of a municipal indebtedness in order to acquire additions, extensions, or improvements of the plant. They deal with the relation of the property to the lien of the mortgage after it is properly acquired. The property has been acquired and the question is whether the lien of the mortgage attaches. We are not concerned with the question whether the contract for its acquisition was void as increasing the municipal debt, but whether as between the owners of the trust certificates and the village the lien of the trust deed attaches. The other issue was not tried and is not before this court. The property was validly acquired, so far as the record discloses, and has become a part of the particular unit known as the Layne-Bowler equipment. The conclusion of the trial court that it is included within the lien of the trust deed must be sustained.

*By the Court.*—Judgment affirmed.