STATE EX REL. THOMSON, Attorney General, Petitioner,
vs. GIESSEL, Director of Budget and Accounts, Respond-
ent. [Office Building Case.] *

*June 17—July 28, 1954.*

* Motion for rehearing denied, without costs, on October 5, 1954.

333

336

338

For the petitioner there was a brief by the *Attorney General* and *Stewart G. Honeck,* deputy attorney general, and *Warren H. Resh* and *Richard E. Barrett,* assistant attorneys general, and oral argument by *Mr. Resh* and *Mr. Honeck.*

For the respondent there was a brief by *Louis Quarles,* special counsel, and *Charles S. Quarles* and *Laurence E. Gooding, Jr.,* all of Milwaukee, and oral argument by *Mr. Louis Quarles* and *Mr. Charles S. Quarles.*

A brief *amicus curiae* was filed by *Beggs & Lawton* of Madison, for the Wisconsin State Employees Association, Wisconsin State Association of Firefighters, Wisconsin Paid Firemen's Association, and Wisconsin Council of County and Municipal Employees.

CURRIE, J.   While in the relief prayed for by the attorney general a peremptory writ of mandamus is sought to compel the respondent to honor the $974,499.40 voucher, we deem the prayer for a declaratory judgment on the questions raised of constitutionality to be determinative of all issues necessary to be considered by us.   Such issues are as follows:

(1) Is the Wisconsin State Public Building Corporation an agency or instrumentality of the state or is it a private corporation?

(2) If it is a private corporation, do not secs. 14.86 and 14.88, Stats., authorizing its creation, constitute the enactment of a special or private law granting corporation powers and privileges contrary to par. 7, sec. 31, art. IV of the Wisconsin constitution?

(3) Is the plan for constructing the addition to the state office building a work of internal improvement which creates a debt contrary to sec. 10, art. VIII of the Wisconsin constitution?

(4) Does not the present plan of financing the construction of the addition to the state office building under the provisions of secs. 14.86 and 14.88, Stats., amount to the loaning of the credit of the state to the Wisconsin State Public Building Corporation contrary to the provisions of sec. 3, art. VIII of the Wisconsin constitution?

(5) Do not secs. 14.86 and 14.88, Stats., by authorizing the corporation to pledge an interest in an existing state building and the land upon which it is situated as collateral for the loan to finance the construction of the new addition create a state indebtedness in violation of sec. 4, art. VIII of the Wisconsin constitution?

Under our prior decisions in *State ex rel. Wisconsin Development Authority v. Dammann* (1938), 228 Wis. 147, 277 N. W. 278, 280 N. W. 698, and *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 185, 60 N. W. (2d) 873, it seems clear that the Wisconsin State Public Building Corporation is not an agency or instrumentality of the state, but a private corporation organized for a public purpose.

In *State ex rel. Thomson v. Giessel, supra,* we were faced with the issue of whether a turnpike corporation organized by the members of the Wisconsin turnpike commission under secs. 182.32 *et seq.,* Stats., pursuant to the express authority granted by sec. 15.96, was a state agency or instrumentality. Such a turnpike corporation would be organized for the purpose of constructing a toll road upon a route agreed to by the state highway commission with the written consent of the governor, the cost of acquiring the right of way and constructing the toll road to be financed through the corporation floating a bond issue. When said bonds have been paid off and retired from the revenues of the corporation the

toll road is to become state property and constitute part of the state trunk highway system. This court squarely held that such turnpike corporation was not a state instrumentality or agency, and therefore its bonds would not constitute an indebtedness of the state.

In the instant case, the Wisconsin State Public Building Corporation was incorporated by three of the members of the state building commission pursuant to the authority granted therefor by sec. 14.86, Stats., and its functions are similar in nature to those of the turnpike corporation considered by us in *State ex rel. Thomson v. Giessel, supra.* Instead of constructing a toll road, it is to construct an addition to the state office building and to borrow the money for so doing and pay off the loan from its revenues received from rentals. After such loan is retired, the lease of the corporation will terminate and the state will have complete title to the building. We are unable to distinguish this corporation from that of the turnpike corporation from the standpoint of whether either constitutes a state instrumentality or agency. The fact that its purposes are of such a public character, or that it has been incorporated by state officers, is insufficient to cause it to be a state instrumentality or agency.

Having held that the corporation is a private one not constituting an agency or instrumentality of the state, the next issue which confronts us is whether sec. 14.86, Stats., providing for its incorporation violates par. 7, sec. 31, art. IV of the Wisconsin constitution. Such constitutional provision prohibits the legislature "from enacting any special or private laws . . . for granting corporate powers or privileges, except to cities."

Counsel for the respondent rely upon the decision in *State ex rel. Church Mutual Ins. Co. v. Cheek* (1890), 77 Wis. 284, 46 N. W. 163, in support of their contention that the provisions of sec. 14.86, Stats., providing for the incorporation of the Wisconsin State Public Building Corporation

and specifying that it shall possess certain powers, violate said constitutional prohibition. Such case held invalid a statute authorizing members of the Methodist Episcopal Church to organize a corporation to insure church and parsonage properties owned by said denomination as contravening the provisions of par. 7, sec. 31, art. IV of the constitution. The basis of so holding was that the statute contemplated the creation of but one corporation and this was a special or private law conferring corporate powers and privileges. This was so because such special statute conferred powers upon the corporation organized pursuant thereto that no other insurance corporation, organized under the general statutes applicable to insurance corporations, would possess.

The insurance corporation in the *Cheek Case* was organized under such special act while the Wisconsin State Public Building Corporation was organized under the general corporation statutes of the state. We construe sec. 14.86, Stats., as so providing for incorporation under such general corporation statutes. In order for the principle of the *Cheek Case* to be controlling we would have to determine that sec. 14.86 invested the corporation with special powers which no other corporation would possess. This we cannot do because all the powers of the corporation mentioned in sec. 14.86, such as leasing property, constructing buildings, and mortgaging the corporation's leasehold interest, are powers which the corporation would possess under the general corporation statutes. The authorizing of the commission to incorporate the corporation and to deal with it in the respects specified is a grant of power to the commission and not to the corporation.

It is, therefore, our conclusion that sec. 14.86, Stats., does not violate par. 7, sec. 31, art. IV of the Wisconsin constitution.

We now turn to the third issue raised of whether a state office building, or addition thereto, constitutes a work of internal improvement within the meaning of sec. 10, art. VIII of the Wisconsin constitution, which provides:

"The state shall never contract any debt for works of internal improvement, or be a party in carrying on such works; . . ."

The question of what is considered to be a work of internal improvement within the meaning of sec. 10, art. VIII of the Wisconsin constitution was considered by this court in the case of *State ex rel. Owen v. Donald* (1915), 160 Wis. 21, 79, 151 N. W. 331, where it was said:

"In *Rippe v. Becker,* 56 Minn. 100, 117, 57 N. W. 331, the precise question we now have under consideration was carefully considered. As we have heretofore said the result there was fully approved here. The opinion of the court, written by MITCHELL, J., is well abridged, as to the principle declared, in the syllabus:

" 'Works of internal improvement,' as used in the constitution, means, not merely the construction or improvement of channels of trade and commerce, but any kind of public works, except those used by and for the state in performance of its governmental functions, such as *a state capitol,* state university, penitentiaries, reformatories, asylums, quarantine buildings, and the like, for the purposes of education, the prevention of crime, charity, the preservation of public health, *furnishing accommodations for the transaction of public business by state officers,* and other like recognized functions of state government." (Emphasis supplied.)

By adopting the foregoing definition of "internal improvement" by the Minnesota court we are committed thereby to hold that any structure which is used by the state in the performance of its governmental functions is excluded from being a work of internal improvement. Thus the state office building, including the proposed addition thereto, is not an

internal improvement, and sec. 10, art. VIII of the constitution has no application thereto.

The fourth issue raised is whether the method of financing the construction of the new addition does not necessarily involve the giving or loaning of the credit of the state for the benefit of the corporation in violation of sec. 3, art. VIII of the Wisconsin constitution, which provides:

"The credit of the state shall never be given, or loaned, in aid of any individual, association, or corporation."

Counsel for the respondent maintain that inasmuch as the loan from the investment board, or from Allstate if the latter takes over the loan commitment, will have to be repaid from the future rentals of the building payable by the state, the state is thereby giving and loaning its credit to the corporation. The commission, as an agency of the state, under the lease back to it by the corporation, will be obligated to pay the rental fixed in such lease for the entire term of thirty-four years, or until the corporation's loan to the investment board, or its assigns, shall have been paid or retired. Our first inquiry with respect to this issue is whether such obligation of the state to pay the future rentals under the lease constitutes a debt.

While in one sense any contract to pay money in the future creates a debt, state and municipal governments might be unable to function except under severe handicap if all such contracts were held to create debts within the meaning of constitutional and statutory prohibitions relating to governmental indebtedness. Because of this there is a tendency upon the part of courts to exclude contracts payable by a government in instalments in the future when the consideration which the payor is to receive in return for such payments is also to be provided in the future. Contracts for services or materials to be supplied at periodic intervals in the future are of this category. 38 Am. Jur., Municipal Corporations,

p. 144, sec. 463; 15 McQuillin, Mun. Corp. (3d ed.), p. 391 *et seq.,* sec. 41.38.

Historically the common-law principles governing the landlord-tenant relationship did not recognize future rent as a presently existing debt or liability. See 1 Tiffany, Land-lord and Tenant, p. 1010, sec. 166. As Tiffany points out, although there be a lease, which may result in a claim for rent, which will constitute a debt, yet no debt occurs until enjoyment of the land has been had. "The obligation to pay rent is contingent upon the lessee's continued enjoyment of the land, and hence his liability is analogous to that of one who has agreed to pay for a building to be erected in the future, or for goods to be delivered, and not that of one who has promised to pay a sum unconditionally."

Similarly, the Minnesota court in *Ambrozich v. Eveleth* (1937), 200 Minn. 473, 483, 274 N. W. 635, 112 A. L. R. 269, stated:

"There is no obligation to pay until the rent is due according to the terms of the lease. Rent to be paid in the future is not a debt or liability for the recovery of which a present action will lie. The duty to pay rent may never arise by the happening of events which by the laws of property relieve a tenant from payment. Because the obligation to pay rent may never arise, it is regarded as contingent and not an absolute liability." See also the recent case of *Protsman v. Jefferson-Craig Consolidated School Corp.* (1953), 231 Ind. 529, 109 N. E. (2d) 889.

We deem that the legislature would have the power to authorize the state to enter into leases for office space to house state agencies performing the governmental functions of the state without contravening any constitutional prohibition against state indebtedness. If a lessor of such premises leased to the state would mortgage the premises in order to pay for improvements or additions required under the lease with the state we would not consider that the credit of the state was be-

ing given or loaned in "aid" to such lessor in such instance, because of the state's obligation to pay future rents, in the sense prohibited by the constitution. If the arrangement is one which is beneficial and not detrimental to the state there is no improper loaning of the credit of the state for the *"aid of any individual, association, or corporation."*

In the instant case the objective of the lease between the lessor corporation and the commission is to benefit the state, and the arrangement is one highly advantageous to it. We conclude, therefore, that sec. 3, art. VIII of the constitution is not violated.

This brings us to the consideration of the last issue raised, viz., whether the provision of secs. 14.86 and 14.88, Stats., authorizing the corporation to mortgage its leasehold interest in the existing state office building, and the land upon which it is situated, including the space on which the proposed addition will be erected, as security for the loan to provide funds to discharge the existing incumbrance and with which to construct the new addition, creates an indebtedness on the part of the state in violation of the provisions of sec. 4, art. VIII of the Wisconsin constitution. Such section of the constitution provides as follows:

"The state shall never contract any public debt except in the cases and manner herein provided."

The exceptions referred to are to be found in secs. 5, 6, and 7, art. VIII of the constitution, and have no application to the facts of the instant case.

The attorney general concedes that, if the corporation should default on the note and mortgage to the investment board (or to Allstate in the event the latter should take over the loan commitment) as a result of the state failing to pay the rental specified in the lease in which the commission is the lessee, the holder of the note and mortgage would have the right to foreclose the mortgage. The mortgage in-

cumbers the leasehold interest of the corporation under the lease in which the commission, as a state agency, is the lessor and the corporation is the lessee. Thus there is a possibility of the state being deprived of the use of the existing state office building for approximately thirty years. From the standpoint of the principle involved, it would seem to be immaterial whether the loan arrangement might result in the loss to the state of existing state property for one year, for thirty years, or forever. We can perceive of no valid distinction, from the standpoint of whether the loan for the payment of which state property is pledged or mortgaged for security constitutes a state debt, between that of incumbering a leasehold and that of mortgaging a title in fee.

An examination of the past decisions of this court, as to whether the pledging of an interest in existing public property as security for a debt makes such indebtedness that of the government owning the incumbered property, in the sense in which the word "debt" is used in the state constitution, discloses a conflict in such decisions. While it may be true that there is no conflict in the express statements made by the court on the question, there, nevertheless, is a conflict in the results reached, as is disclosed by an analysis of the cases.

In *State ex rel. Morgan v. Portage* (1921), 174 Wis. 588, 184 N. W. 376, the railroad commission petitioned for a writ of mandamus to compel the city of Portage to improve its municipal waterworks. The city claimed it could not comply without violating the constitutional debt limitation imposed by sec. 3, art. XI of the Wisconsin constitution, as said section then read. The railroad commission contended the city could legally comply by financing the cost of the improvement by issuing bonds pursuant to a particular statute which authorized municipalities to purchase or construct a public utility and provide extensions and improvements thereto by

issuing bonds payable solely out of the future revenues resulting from the operation of the utility. The statute expressly provided that such bonds "shall not constitute an indebtedness of such city, village, or town within the meaning of the constitutional provisions and limitations." However, it was also expressly provided that the holders of the bonds should have "a statutory mortgage lien" upon the utility, which might be enforced in the event of default. The court held that any bonds issued pursuant to such statute to purchase or construct a utility would not constitute an indebtedness of the city for the purposes of sec. 3, art. XI of the constitution because in the nature of a purchase-money mortgage. However, bonds issued to finance the making of improvements to an existing utility plant were held to constitute an indebtedness of the municipality within the meaning of the constitutional limitation, because the statutory mortgage lien would cover the existing plant as well as the improvement. Therefore, the court denied the application of the railroad commission for a writ of mandamus, thus upholding the position of the city. We quote from the gist of the court's opinion as follows (p. 595):

"To carry out this scheme results in mortgaging the city's property to secure the payment of a liability which was not a lien on the city's property in the nature of a purchase-money mortgage, and constitutes in fact an application of the property to the payment of a corporate debt. It must therefore be held that the city of Portage cannot make the improvements ordered by the railroad commission under the provisions of secs. 927–16 and 927–19b, because it would result in creating a corporate indebtedness in excess of the constitutional limitation."

Seven years after *State ex rel. Morgan v. Portage, supra,* came the decision in *Loomis v. Callahan* (1928), 196 Wis. 518, 220 N. W. 816. In this last-mentioned case the Board of Regents of the University were faced with the problem

of financing the decorating, furnishing, and equipping the Memorial Union building then nearing completion and the cost of erecting a field house. Sec. 36.06 (6), Stats., authorized the regents to lease university lands to a nonprofit corporation upon condition that such corporation lease the same back to the regents and construct such improvements and furnish such equipment thereon as the regents should designate or approve. The statute further provided that the rentals payable by the regents to the corporation were payable out of the revenues derived from the operation of the buildings. The Wisconsin University Building Corporation was organized as a nonprofit corporation and two separate fifty-year leases were executed by the regents to the corporation, one covering the land on which the Memorial Union was situated, and the other being vacant land upon which the field house was later erected. The rental under each lease was one dollar. The corporation then leased the two parcels back to the regents. The lease back of the Memorial Union property provided for an annual rental of $37,245.52. The corporation made applications to the annuity board of the state retirement system for loans to finance the improvements which the regents requested be made on the two leased premises, the loan applied for on the Memorial Union property being $400,000 and that on the field house property being $326,000, the repayment of the same with four and one-half per cent interest to be amortized over a fifteen-year period. As security for such loans the corporation proposed to mortgage its leasehold interests in the two properties. The plaintiff Loomis, as a taxpayer, instituted an original action in this court to restrain the members of the annuity board from making the loans.

Loomis in his printed brief advanced various reasons why he contended that the proposed loans were invalid including that a state debt would be created thereby in violation of the state constitution. However, he did not advance as a reason

why a state debt would be created the fact that the mortgaging of the leasehold interest in university lands and the nearly completed Memorial Union building, constituted the incumbering of an interest in existing state property thus making the loans state debts within the scope of the principle laid down in *State ex rel. Morgan v. Portage, supra.* This may possibly account for the fact that this court in its opinion stated (p. 525):

"It is not contended that the state can be coerced into applying to the payment of its rent either its general revenues *or property owned by it at the time of the lease by the building corporation.*" (Emphasis supplied.)

The court's opinion in *Loomis v. Callahan, supra,* however, cites *State ex rel. Morgan v. Portage, supra,* as authority for the principle that a city may contract for the purchase of property and pledge the proceeds arising from the operation thereof without creating a city indebtedness. The other principle of the *Morgan Case,* and the one which determined the outcome, of the incumbering of existing public property as security for a loan, was not touched upon in the opinion. However, the effect of the court's decision in *Loomis v. Callahan* wherein it was held that the proposed loans did not constitute a state debt, was to hold that the mortgaging of a leasehold interest in existing state property to secure a loan of the lessee corporation does not constitute a state debt. We are unable to reconcile this with the prior holding in *State ex rel. Morgan v. Portage.*

Eight years after *Loomis v. Callahan, supra,* was decided this court in *Morris v. Ellis* (1936), 221 Wis. 307, 266 N. W. 921, unmistakably indicated that it considered the rule of *State ex rel. Morgan v. Portage,* as to the effect of mortgaging of existing public property, to still be the law of this state. In *Morris v. Ellis* the village of Eagle River wished to acquire a new municipal water plant. It entered

into a contract with Layne-Bowler Chicago Company for the construction of the well and system and the supplying of the equipment, the village to provide the land upon which the plant was to be erected. The village bought the necessary land for $700 and then executed a trust deed covering it and the new plant to secure $30,000 of mortgage certificates to finance the cost of the new plant. The village was not obligated to pay said mortgage certificates except out of future revenues of the plant and by statute it was expressly provided that no municipal liability was created thereby. The prior indebtedness of the village was such that if any substantial part of this $30,000 of certificates was held to create a village debt, the constitutional debt limit would be exceeded. It was urged by the defendant village officers that a village debt had been created under the decision in *State ex rel. Morgan v. Portage, supra,* because of the inclusion in the trust deed of the land purchased by the village. However, this court held that the facts did not bring the case within the rule of the *Morgan Case,* and declared (p. 318) :

"The lots acquired by the village were only acquired in pursuance of an obligation imposed by the Layne-Bowler contract, and, when they were acquired, became a part of the property and plant which the village agreed to buy. The contract did not obligate the village to pay any sum in discharge of the trust deed and certificates except out of revenues to be obtained from use of the unit of which the lots had become a part. As stated by the trial court, the result of the transaction was the same as if the Layne-Bowler Chicago Company had bought and paid for the lots and added $700 to the selling price of the water-supply system. *No part of the property of the village owned and held at the time of the contract was incumbered by this transaction.* The case is materially different from the *Morgan Case, supra,* where it was proposed to mortgage all of the municipal water works of the city of Portage to secure a debt for the purpose of making additions and improvements." (Emphasis supplied.)

The conflict between *State ex rel. Morgan v. Portage, supra,* and *Morris v. Ellis, supra,* on the one hand, and *Loomis v. Callahan, supra,* on the other, cannot be reconciled on the basis that the first two mentioned cases deal with whether a debt was created within the meaning of sec. 3, art. XI of the constitution, while the *Loomis Case* was concerned with the term "debt" as used in sec. 4, art. VIII. We deem that the terms "debt" and "indebtedness" as used in these two constitutional provisions have the same meaning as both deal with public debt and the underlying intent is the same. The decisions in *State ex rel. Morgan v. Portage* and *Morris v. Ellis* were rendered under the provisions of sec. 3, art. XI of the constitution as they stood prior to 1932, when such section was amended to permit cities and villages to pledge assets of an existing utility plant for a loan to finance additions or improvements thereto, where such loan imposes no liability on the city or village, but is payable solely out of future revenues of the utility, without such loan having to be included in the total indebtedness of the city or village in determining the debt limit imposed by such section. However, there has been no corresponding change made in sec. 4, art. VIII of the constitution.

The great weight of authority favors the rule of *State ex rel. Morgan v. Portage, supra.* The general rule is stated in 64 C. J. S., Municipal Corporations, p. 379, sec. 1853 (b) (1), as follows:

> "Where, in order to secure payment of an obligation payable from the revenue of income-producing property, a mortgage or lien is imposed on property already owned by a municipality, or on property other than that purchased, an indebtedness is incurred within the limitations on indebtedness, even though the mortgage itself cannot be foreclosed and although the city does not otherwise obligate itself to pay; . . ."

For further statements of this principle, see 38 Am. Jur., Municipal Corporations, p. 157, sec. 475; and annotations in 72 A. L. R. 687, at p. 698, and 146 A. L. R. 328, at p. 352.

For clarity of expression it would be difficult to improve upon the following statement appearing in the opinion of the Illinois supreme court in *Joliet v. Alexander* (1902), 194 Ill. 457, 462, 62 N. E. 861:

"One who pawns or pledges his property and who will lose the property if he does not pay, is indebted although the creditor has nothing but the security of the property; . . ."

While in subsequent cases the Illinois court receded from one aspect of its decision in *Joliet v. Alexander, supra,* it has adhered to the principle of the foregoing quotation that a mortgage of existing public-owned property creates a debt in the sense of the constitutional debt limitation even if there is no liability of the municipality to pay the same. *Michigan Boulevard Bldg. Co. v. Chicago Park District* (1952), 412 Ill. 350, 106 N. E. (2d) 359.

Logically there would seem to be just as much coercion on the part of the state to pay an indebtedness, for the payment of which existing state property, or an interest therein, had been pledged as security but the state had not otherwise agreed to pay the debt, as there would be in case of a debt as to which the state had made itself directly liable for the payment thereof. Both would appear to be equally objectionable from the standpoint of the objective which the framers of the constitution sought to attain by sec. 4, art. VIII of our state constitution.

We, therefore, are constrained to conclude that *Loomis v. Callahan, supra,* must be overruled in so far as it may be interpreted as authority that the incumbering of an interest in existing state property as security for a loan, as to which the state is not otherwise directly liable to make payment,

does not make such loan a debt of the state in violation of sec. 4, art. VIII of the constitution.

It necessarily follows that the provisions of secs. 14.86 and 14.88, Stats., in so far as they authorize the mortgaging by the corporation of a leasehold interest in the existing state office building and the lands upon which it is situated or adjoining thereto are unconstitutional and void.

This holding of unconstitutionality makes it unnecessary to pass upon the issue of statutory construction raised in the complaint as to whether the investment board has the power to transmit the loan commitment to Allstate.

*By the Court.*—Complaint dismissed.

GEHL, J. (*dissenting*). We are not at liberty to decide the issues in this case as an original proposition. They were determined in *Loomis v. Callahan,* 196 Wis. 518, 220 N. W. 816. The majority so concede, but overrule the decision in that case in express terms. A rule of property was there declared, a rule which we should adhere to without regard to how we might be inclined to decide the question if it were new. 21 C. J. S., Courts, p. 396, sec. 216; *Wisconsin Power & Light Co. v. Beloit,* 215 Wis. 439, 254 N. W. 119; *Will of Wehr,* 247 Wis. 98, 18 N. W. (2d) 709.

It does not appear that investments have been made by private investors in reliance upon the law declared in *Loomis v. Callahan, supra,* although it may not be amiss to presume that they have. In any event, it does not appear that reliance has not been placed by investors upon the decision which is now over twenty-five years old. A court should hesitate long before overruling a decision, the result of which is to disturb rights which may have been acquired thereunder or in reliance thereon. During the long period since its pronouncement, the legislature has taken no action to change the rule of that case. True, it could not have changed it by legislative enactment, but if it had been dissatisfied with it, it might

have set in motion the procedure for a constitutional amendment to effect a change.

It is not as though the attention of the legislature had not been called to the decision. During its 1949 session, Bill No. 491, S., which would create sec. 14.86, Stats., was introduced. Sec. 14.86 provides the heart of the plan here proposed to be followed. The senate requested the attorney general for an opinion as to the constitutionality of the proposed enactment. Relying upon *Loomis v. Callahan, supra,* the attorney general advised that the bill, if amended in several minor respects, was constitutional. The act was passed.

We should not under the circumstances depart from a rule of property so clearly expressed and for so long a time recognized as being the law.