PAUL L. BROWN, Secretary State Building Commission
You have requested my opinion, in my capacity as bond counsel to the State Building Commission, as to whether the anticipated sale of $75,000,000 of revenue bonds in accordance with subch. 11 of ch. 18, Stats., and related statutes, for the student loan program as authorized by sec. 39.37, Stats., and related statutes, will result in additional public debt to the State of Wisconsin. These statutes creating the authority to issue revenue bonds and the authority to use their proceeds for the student loan program are found in secs. 104 and 511 of ch. 29, Laws of 1977, published on June 29, 1977.
Revenue bonds are not debts of the state. Revenue bonds are paid for from revenues generated by the program being financed by the *Page 203 
bonds, rather than from the state's general revenues. Revenue bonds are not absolute obligations of the state to pay; their payment by the state is subject to a sufficiency of the revenues generated by the program.
Student loan revenue bonds are payable from and secured by a pledge of the revenues generated by the repayment of loans financed by and reserves created from the proceeds from the bonds. There also are certain loan guarantees from nonstate entities: namely, the federal government and the Wisconsin Higher Education Corporation.
The state has adopted a policy that those who benefit from the program shall pay for its cost. No assets of the state are pledged to the payment of the bonds other than those assets acquired from the bond proceeds. In the unlikely event of a default the state would not be in a worse position than it was prior to entering into the financing. It would have no obligation to pay for the bonds from its general funds, and it would not lose any property other than that acquired from the bond proceeds. The moral obligation the Legislature may provide under sec. 18.61 (5) would not be sufficiently binding to create debt, since such an obligation is not absolute. The state is not compelled to recognize moral obligations. State ex rel. Warren v.Nusbaum, 59 Wis.2d 391, 431, 208 N.W.2d 780 (1973).
Wisconsin Constitution art. VIII, sec. 4, provides:
 "The state shall never contract any public debt except in the cases and manner herein provided."
Constitutional debt was defined by the Wisconsin Supreme Court in State ex rel. Owen v. Donald, 160 Wis. 21, 59, 151 N.W. 331
(1915), as follows:
 "There is nothing particularly technical about the meaning of the word `debt' as used in the constitution. It includes all absolute obligations to pay money, or its equivalent, from funds to be provided, as distinguished from money presently available or in process of collection and so treatable as in hand. Earles v. Wells, 94 Wis. 285, 68 N.W. 964; Doon Tp. v. Cummins, 142 U.S. 366, 376, 12 Sup.Ct. 320." *Page 204 
More recently the court defined constitutional debt to mean "all absolute obligations to pay money or its equivalent." Stateex rel. Warren v. Nusbaum, supra, at 427.
Following the Owen decision are cases involving attempts by the state to finance the construction of public improvements without creating "public debt," such as State ex rel. Thomson v. Giessel,267 Wis. 331, 65 N.W.2d 529 (1954), and Glendale Development v.Board of Regents, 12 Wis.2d 120, 106 N.W.2d 430 (1960). These cases were governed by the earlier cases of State ex rel. Morganv. Portage, 174 Wis. 588, 184 N.W. 376 (1921), and Morris v.Ellis, 221 Wis. 307, 266 N.W. 921 (1936). From these cases emerged authority that:
 1. The terms "debt" and "indebtedness" as used in Wis. Const. art. XI, sec. 3 (municipal debt), and art. VIII, sec. 4 (state debt), have the same meaning. 267 Wis. at p. 352.
 2. No state debt is created unless the state itself is under a legally enforceable obligation to pay. 12 Wis.2d at p. 135.
 3. Debt is not created by a pledge of security only in the property to be acquired from the proceeds of the bonds. 174 Wis. at pp. 593-594; 221 Wis. at pp. 318-319.
 4. A municipality does not create debt by obtaining property to be paid for wholly out of the income from the property. 221 Wis. at p. 319.
More recently, in State ex rel. Hammermill Paper Co. v. LaPlante, 58 Wis.2d 32, 205 N.W.2d 784 (1973), while approving the constitutionality of Wisconsin's industrial development revenue bond law, the court summarized at p. 67:
 "Where the purchase price for property to be acquired by a municipality is payable exclusively from income or profits to be derived from the property purchased and a mortgage or lien attaches only to the property purchased, no debt is created within the meaning of art. XI, sec. 3. However, where a mortgage is imposed on property existing or already owned by the municipality to secure the purchase price, municipal debt is created within the meaning of art. XI, sec. 3. *Page 205 
 "The purpose of the debt limitation placed upon municipal corporations by art. XI, sec. 3 is to prevent municipal bankruptcy which would result from the creation of a fiscal burden beyond the financial capacity of local taxpayers, State ex rel. La Follette v. Reuter (1967), 33 Wis.2d 384, 404, 147 N.W.2d 304. Pursuant to sec. 66.521, Stats., and the resolution of the common council of the city of Kaukauna, the bonds issued by the city are payable solely out of the rentals or revenues to be derived from the project. While a lien is placed upon the revenues and the property to be acquired, no lien is imposed upon city property owned prior to the issuance of the bonds. Upon default and in the event of sale of the project, the municipality would be placed in the same position as it had been prior to the issuance of the bonds. No municipal debt is created within the meaning of art. XI, sec. 3."
There are two statutory definitions of public debt in ch. 18 of the Wisconsin Statutes.
Section 18.01 (4), Stats., defines the term as follows:
 "'Public debt' or `debt' means every voluntary, unconditional undertaking by the state to repay a certain amount of borrowed money:
 "(a) Out of the state treasury, except a loan or advance by any state agency or fund to any other state agency or fund; or
 "(b) For which any existing asset of the state is pledged, except the pledge of an outstanding evidence of indebtedness without recourse."
The newly created sec. 18.52 (4), Stats., defines the term as follows:
 "'Public debt' means every voluntary, unconditional undertaking by the state to repay a certain amount of borrowed money:
 "(a) Out of the state treasury, except a loan or advance by any state agency or fund to any other state agency or fund; or
 "(b) For which any existing asset of the state is pledged, except the pledge of an outstanding evidence of indebtedness without recourse." *Page 206 
The two definitions of public debt are identical and consistent with the definition which has emerged from the case law.
Other provisions in the newly created subch. 11 of ch. 18 of the Wisconsin Statutes particularly germane to this discussion include:
 1. Section 18.52 (5)(c), which provides that a revenue obligation is not public debt under sec. 18.01 (4).
 2. Section 18.56 (1), which provides that revenue bonds shall be payable only out of the redemption fund.
 3. Section 18.56 (2), which provides that there shall be a security interest in the income and property of each revenue-producing enterprise or program to the holders of the related bonds.
 4. Section 18.61 (1), which provides that the state shall not be generally. liable on revenue obligations, and revenue obligations shall not be a debt of the state for any purpose whatsoever.
The revenue bonds are secured by a pledge of the revenues out of which the bonds are payable and by a security interest in the program acquisitions from related bond proceeds. Revenue bonds are not general obligations. The revenue bond law expressly negates the state's power to create a legally enforceable debt against it. In State ex rel. Bowman v. Barczak, 34 Wis.2d 57, 73,148 N.W.2d 683 (1967), the court said:
 "The express negation of an industrial development corporation's power to pledge the credit of the state or municipality also protects the enactment from the alleged violation of sec. 3, art. VIII, Wisconsin constitution. There can be no clash with such constitutional provision unless the giving of credit results in a legally enforceable obligation against the state. State ex rel. La Follette v. Reuter, supra; State ex rel. Thomson v. Giessel (1955), 271 Wis. 15, 72 N.W.2d 577; State ex rel. Wisconsin Development Authority v. Dammann (1938), 228 Wis. 147, 197, 277 N.W. 278, 280 N.W. 698."
These revenue bonds create no absolute obligations of the state which must be satisfied or discharged out of future appropriations by the State Legislature. Any security for their payment by the state is *Page 207 
limited to the program acquisitions made with related bond proceeds. The bonds cast no additional burden upon state taxpayers and do not create constitutional or statutory debt of the State of Wisconsin.
BCL:APH