Earles vs. Wells and others.

---

Earles, Appellant, vs. Wells and others, Respondents.

*October 15 — November 4, 1896.*

*Municipal corporations: Limitation of power to contract debts: "Lease" of waterworks: Constitutional law.*

1. A contract with a city for the construction of waterworks, providing that the constructors might issue bonds to a certain amount on the plant; that when the works were completed they would

94   285
96    93
d97  512

94   285
d98  133

94   285
99    10
99    16

94   285
100  519
e100 521

94      285
112    ¹358

94      285
59 LRA  616
59 LRA  618n

lease them to the city in consideration of certain yearly rentals; that they might assign the lease to the mortgagees or trustees for the benefit of the bondholders; that the city should thereupon take possession and assume the management and operation thereof, pay all taxes and assessments thereon, keep the same in repair, and pay all damages arising from their maintenance and operation; that all rentals in excess of interest on the bonds should be at once applied to the cancellation and payment thereof; and that upon payment of the rentals as therein prescribed the plant should at once pass to and become the property of the city without any further conveyance or contract whatever,— is *held* to be an indirect method of expressly agreeing to pay the principal and interest to become due on the bonds; and, the obligation assumed being in excess of the constitutional limit of indebtedness, the contract is void.

2. In determining whether a municipal indebtedness is in violation of sec. 3, art. XI, Const. (limiting the right of municipal corporations "to become indebted in any manner or for any purpose" to an amount in the aggregate exceeding five per cent. of the value of the taxable property therein at the last assessment), account must be taken of all liabilities for the payment of which there is no money or assets in the treasury, or current revenues collected or in process of collection.

APPEAL from a judgment of the circuit court for Outagamie county: JOHN GOODLAND, Circuit Judge. *Reversed.*

It appears from the record: That the defendant, the city of *Kaukauna*, was incorporated and organized under and by virtue of ch. 135, Laws of 1891. That on May 4, 1895, the defendant city adopted an ordinance granting to the other defendants, constituting the firm of Wells, Reichert & Co., the right to construct waterworks therein for the purpose of supplying the city and its inhabitants with water for private and corporate purposes, and for making and entering into a lease and leasing from the firm said waterworks as therein prescribed, and upon the terms and conditions therein mentioned; which ordinance contained, among other things, the following, in effect: (9) That upon the completion of the works the firm shall notify the mayor and council that the works are ready for test and accept-

ance, and the city shall forthwith subject the same in a thorough manner to the test herein prescribed, and, if satisfactorily performed, the works shall be accepted according to the terms herein provided, and the hydrant rental shall commence from the date of notification of the completion of the works. (11) That the firm shall furnish water free for personal use in the public schools and other public buildings, and for city construction, and for the purpose of flushing any sewers in public buildings, streets, or alleys when necessary, and for a drinking basin for animals in each ward, to be operated for the benefit of the public from May 1 to November 1 every year during the term of the ordinance. (12) That until such time as the city shall assume the management and operation of the system of waterworks, the rules and rates therein prescribed shall govern; that the firm shall build and construct the waterworks in the manner herein set forth, and upon the terms and conditions herein contained, and shall commence on the same within sixty days from the granting of the ordinance, and complete the work and have the same ready for acceptance by the city within seven months from the time of the filing and acceptance of the bond therein specified. (13) That the firm shall, within fifteen days, file with the clerk of the city a written acceptance of the ordinance and a bond in the penal sum of $10,000 for the faithful performance of all the stipulations of the ordinance, and upon such filing the ordinance shall be in full force and effect, and shall be considered a contract between the city and the firm. (14) That the city reserves the right at all times to place upon the work a competent engineer for the purpose of fully inspecting the nature of the work done and materials furnished, who shall have access at all reasonable times to all books and papers of the firm to enable him to ascertain the exact cost of the same. (15) That the firm shall have the right at any time before the making of the lease herein mentioned to

pledge the works, or so much as shall be necessary for the purpose of raising a sum thereon, not to exceed $80,000, and may execute and deliver to a trustee its mortgage or trust deed thereof, and, in addition thereto, issue bonds in denomination of $500, not to exceed $100,000, at interest not to exceed six per cent. per annum, payable semi-annually, and the bonds payable at such times and in such manner that, in case the city shall lease from the firm such plant, then that all sums paid by the city as rentals in excess of interest upon the original cost of such plant may, at the time of payment, be at once applied to the payment of the bonds, and shall cancel them to the amount so paid; that the firm shall have the right to assign the lease to the trustee for the purpose of effecting a sale of the bonds; that all surplus, if any, which shall be realized upon the sale of the bonds, after paying to the firm the $80,000 and accrued interest, shall be applied upon the payment of any or all of said bonds. (16) That the franchise, license, and authority, and all the rights and privileges hereby and herein granted and conferred, shall remain in full force and effect, commencing with the acceptance of this ordinance, and ending January 1, 1915. (17) That the city agrees, so long as this franchise or grant shall exist under and by force of the rights and grants herein contained, that it will pay to the firm or assigns, as rental for ninety hydrants so to be constructed, for and during the continuance of this franchise, the sum of $6,000 per annum, and for each and every additional hydrant, when constructed, the sum of $50 per hydrant, as hydrant rental, and the city shall at no time employ and have in use less than ninety hydrants; that the city agrees to and with the firm that, upon the completion of the waterworks in accordance with the agreements and conditions named herein, then, and in that case, the city will at once enter into a contract of lease with the firm, leasing from it said waterworks in the form and upon the condi-

tions stated in the blank lease therein set forth, containing provisions to the effect that the city should hold for the term of twenty years from the completion of the water-works, yielding and paying as rental therefor $7,000 per annum for the first four years, $9,000 per annum for the next succeeding six years, and $10,000 per annum for the remaining ten years of the lease; provided, however, that in case the full amount of $100,000 of bonds are not sold to raise the $80,000, or, if any surplus remains from the sale of the bonds, then, and in that case, there shall only be such sums paid each year for the last ten years of the lease as shall be necessary to pay the interest and principal on the remaining unpaid bonds,— it being the intention that the city shall only pay such sums as rental as will be sufficient to pay the interest and principal of the bonds actually used; that the city promises to pay the rental at the times and in the manner aforesaid, and to keep the premises in good repair, and to observe all the conditions agreed to be performed; that the city will, during the continuance of the lease, pay all taxes and assessments of every kind and nature which may be assessed or levied upon the premises, and at its own cost maintain in perfect repair the works and all machinery in connection therewith, during the lease, and pay any and all damage which may result to any one by reason of its so operating or maintaining the works; that upon the payment of the sums of money at the times and in the manner aforesaid, without delay, then, in that case, said property *shall at once pass to and become the property of the city without further conveyance or contract whatever.* (18) That the city shall annually, during the term, levy and collect a tax sufficient to pay the said hydrant and lease rental accruing during each year, and said tax, when collected, shall be kept separate and known as the Water Rental Fund, and shall be held inviolate for, and is hereby irrevocably pledged and appropriated for, the payment of

said rental in the manner herein provided.    Provisions to
meet the requirements of this section shall be made in the
annual appropriation bill.    (19) That in case the firm shall
convey by trust deed or mortgage, as provided, then, in that
case, the city shall pay, and is hereby authorized to pay, all
rentals to the trustee or mortgagee, and take receipts there-
for which shall be binding upon the firm, and the rentals
shall be applied upon the payment of the bonds and the in-
terest thereon.

May 20, 1895, the plaintiff, as a resident and owner in fee
simple of real and personal property in the city, subject to
taxation, to the value of over $2,000, commenced this action
to have the ordinance described adjudged to be null and
void, and that the defendants and all persons acting for
them or under their authority be restrained and enjoined
from further proceedings thereunder.    The complaint set
forth the ordinance, the substance of which has been stated,
and alleged the facts stated, and also alleged, in effect, that
the cost of the waterworks, as provided for in the ordinance,
together with the other indebtedness of the city, would ex-
ceed five per cent. of the assessed valuation of the city at
the assessment for 1894; that the ordinance had been ap-
proved by the city and accepted by Wells, Reichert & Co.,
who had given their bond to the city, as required, which
bond had been approved by the city May 7, 1895; that
Wells, Reichert & Co. were about to enter upon the execu-
tion of the contract at great expense to be incurred to the
city, and the irreparable damage and injury to the residents
and taxpayers thereof; that the ordinance was void, and
contrary to law and the charter of the city, in that it pur-
ports to be an assumption on the part of the city of bonded
indebtedness, which, together with the other indebtedness
of the city, would exceed five per cent. of the assessed valu-
ation of the city at the last assessment thereof; that the
leasing of the waterworks by the city was unauthorized,

and contrary to law, and void; that the ordinance was adopted for the purpose of attempting to evade the conditions of the charter concerning the incurring of municipal indebtedness and the leasing of a system of waterworks for municipal purposes.

The firm and the city each separately answered by way of admissions and denials. At the close of the trial the court found, as matters of fact, the facts stipulated, to the effect that the ordinance was a full, true, and correct copy of the same, and was regularly and legally ordained by the city, as provided by the charter; that the population of the city was about 6,000 people; that the assessed valuation of the property in the city, as shown by the assessment rolls for 1894, was $1,114,500; that the bonded indebtedness of the city amounted to $73,000, which included $18,000 of school-district bonds; that the total receipts of the city for 1894 amounted to $61,377.78; that the cost of maintaining the city, and the disbursements of all kinds and of every nature, for 1894, amounted to $43,963.10; that the average rate of taxation of the city was 4.47 per cent.; that the amount of taxes levied in the city for 1894 was $51,287.53; that of this amount $2,992.89 was returned delinquent, leaving the amount actually collected $48,294.64; that the amount of money necessary to pay the annual rental of the waterworks, as provided by the ordinance, and the other expenses of maintaining the city, was within the current revenues of the city; that the city was without adequate fire protection; that several attempts had been made by citizens to procure the construction of waterworks in and about the city; that Wells, Reichert & Co. was a reputable and responsible firm, and willing to construct the waterworks upon the terms set forth; that the rentals were fair, and in no wise burdensome upon the city; that the contract was one of great advantage to the city; that the construction of the waterworks was a public necessity; that the revenues

Earles vs. Wells and others.

derived by the city from private consumers of water would materially reduce the amount which the city was to pay as rentals. And as conclusions of law the court found, in effect, that the ordinance was in all things conformable to the requirements of the charter, and was in all things a valid grant of authority to Wells, Reichert & Co., and was in all things a valid and binding contract between the city and Wells, Reichert & Co.; that the defendants were entitled to judgment dismissing the complaint, with costs; and ordered judgment accordingly. From the judgment entered thereon accordingly the plaintiff brings this appeal.

*G. H. Dawson*, for the appellant.

*John M. W. Pratt*, attorney, and *Thomas M. Kearney*, of counsel, for the respondents *Wells* and others.

For the respondent city of *Kaukauna* there was a brief signed by *E. A. Baker*, *Charles B. Wood*, and *Horace S. Oakley*, and oral argument by *Mr. Oakley*. They contended, *inter alia*, that a municipal corporation which by ordinance or contract undertakes, in performing its functions as such municipal corporation, to pay stated sums from time to time for services as they are rendered, or for materials as they are furnished, does not thereby create present indebtedness. No debt is incurred by such municipal corporation until the services have been actually rendered, or the materials have been actually furnished. *State v. McCauley*, 15 Cal. 429; *Koppikus v. State Capitol Comm'rs*, 16 id. 248; *People ex rel. McCullough v. Pacheco*, 27 id. 175; *East St. Louis v. East St. Louis G. L. & C. Co.* 98 Ill. 415; *Carlyle v. Carlyle W., L. & P. Co.* 140 id. 445; *Foland v. Frankton*, 142 Ind. 546; *Valparaiso v. Gardner*, 97 id. 1; *Crowder v. Sullivan*, 128 id. 486; *Seward v Liberty*, 142 id. 551; *Dively v. Cedar Falls*, 27 Iowa, 227; *Grant v. Davenport*, 36 id. 396; *Burlington W. Co. v. Woodward*, 49 id. 58; *Smith v. Inhabitants of Dedham*, 144 Mass. 177; *Saleno v. Neosho*, 127 Mo. 627; *Lamar W. & E. L. Co. v. Lamar*, 128 id. 188; *Territory ex*

*rel. Woods v. Oklahoma,* 2 Okl. 158; *Appeal of Erie,* 91 Pa.
St. 398; *Wade v. Oakmont,* 165 id. 479; *Walla Walla W. Co.
v. Walla Walla,* 60 Fed. Rep. 957; *Utica W. W. Co. v. Utica,*
31 Hun, 426; *Weston v. Syracuse,* 17 N. Y. 110; *Budd v.
Budd,* 59 Fed. Rep. 735; *Laycock v. Baton Rouge,* 35 La.
Ann. 475. Expenses incurred by a city for water are cur-
rent expenses, payable out of the current revenue. It is there-
fore competent for a city to contract for water and to pay
for the water as it is furnished, notwithstanding that the
debt-contracting power of such city has been absorbed by
bonded and other prior indebtedness; provided it appears
that the current revenues of the city are ample to carry on
the city government, to meet all fixed charges, and also to
pay the water rentals as they accrue.

CASSODAY, C. J. It appears from the statement made
that the ordinance was adopted May 4, 1894; that there-
upon Wells, Reichert & Co. filed their acceptance of the
same, and gave their bond for the faithful performance of
the work, as required, which bond was approved by the city
May 7, 1894; that such ordinance, acceptance, bond, and ap-
proval were therein agreed to be in full force and effect as
a contract between the firm and the city; that by the terms
of such contract such works were to be completed within
seven months,— that is to say, on or before December 7,
1894; that the city therein reserved the right at all times
to have its engineer fully inspect the nature of the work
done and materials furnished, and all books and papers, to
enable him to ascertain the exact cost of the works; that
to construct the works the firm was authorized to issue
bonds of $500 each to an amount not exceeding $100,000,
and to mortgage the plant to secure not exceeding $80,000
of such bonds, which last amount was to be regarded the
original cost of such plant; that, as soon as completed, and
certified to by such engineer as such inspector, the city was

to receive the lease of the same, as prescribed; that such lease was to extend for twenty years from the completion of the works, which covers substantially all the time the franchises are to remain in force, as they are to terminate January 1, 1915; that the firm was authorized to assign such lease to a trustee or mortgagee to effect a sale of such bonds; that, after receiving the lease, the city was to pay, as rental thereon, annually, $7,000 during each of the first four years, $9,000 during each of the next six years, and $10,000 during each of the remaining ten years; that such bonds were to be made payable at such times and in such manner that all sums paid by the city, as such lessee, as rentals, in excess of the interest upon the original cost, may, at the time of payment, be at once applied to the payment and cancellation of the bonds to the amount so paid; that all surplus on the sale of the bonds, after paying the $80,000 and accrued interest, was to apply on the payment of the principal sums named in the bonds, to the end that the city should only pay, as rentals, the original cost of the plant, $80,000 and interest; that from the time of receiving the lease the city was not only to pay all taxes and assessments upon the plant, but to keep the same in repair, and pay all damages resulting from its maintenance and operation; that from a time not expressly named, but fairly implied to be the time of receiving such lease, the city was to "assume the management and operation of said system of waterworks;" that the city was, annually, for the term of said twenty years, to levy and collect a tax sufficient to pay such hydrant and lease rentals; that upon the payment of the several sums of money at the times and in the manner mentioned, without delay,— that is to say, upon paying and taking up such bonds,— then the plant should at once pass to and become the property of the city, without any further conveyance or contract whatever.

The upshot of the arrangement is to the effect that Wells,

Reichert & Co. should construct the works, and issue bonds and secure the same by mortgage on the plant to the amount of $80,000, and, when completed, lease the same to the city, and then assign the lease to the mortgagee or a trustee for the benefit of the bondholders, and that the city should thereupon take possession and assume the management and operation of the plant, and assume the payment of the outstanding bonds and mortgage in the manner indicated.  The agreement to pay the annual rentals mentioned is but an indirect method of expressly agreeing to pay the principal and interest to become due on the several bonds.  In fact, by the express provisions of the ordinance and the contents of each bond, as therein prescribed, the city is, in legal effect, to be a party to each and every bond, and necessarily responsible for its payment.  The city was authorized "to provide for the erection, maintenance, and operation of waterworks," and "by contract or ordinance grant to any person or persons, company or corporation, the full right and privilege to build and own such waterworks, and to maintain, operate and regulate the same."  Laws 1891, ch. 135, sec. 39, subd. 33.  It was also authorized to "purchase or lease" waterworks, or the interest of any corporation therein, or to "obtain the control of such works by purchasing the stock of such corporation and keeping up its organization," and "provide for the payment of such purchase by the issuance of bonds or otherwise, . . . not contravening the provisions of the constitution in respect to municipal indebtedness."  Laws of 1895, ch. 182.  The constitution of this state provides that "No county, city, town, village, school district, or other municipal corporation, shall be allowed to become *indebted in any manner or for any purpose, to any amount* including existing indebtedness in the aggregate *exceeding five per centum* on the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such in-

debtedness;" that before "incurring such indebtedness" such municipality must "provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same." Sec. 3, art. XI, as amended in 1874. It requires the authority of no adjudication to prove that this constitutional limitation means just what it says, and is absolutely binding, not only upon every such municipality and its officers, but also upon the legislature itself. Nevertheless we cite a few of the many cases construing similar constitutional provisions: *Buchanan v. Litchfield*, 102 U. S. 278; *Weightman v. Clark*, 103 U. S. 256; *School Dist. v. Stone*, 106 U. S. 183; *Litchfield v. Ballou*, 114 U. S. 190; *Lake Co. v. Rollins*, 130 U. S. 662; *Lake Co. v. Graham*, 130 U. S. 674; *Doon v. Cummins*, 142 U. S. 366; *Nesbit v. Riverside Independent Dist.* 144 U. S. 610; *Hedges v. Dixon Co.* 150 U. S. 182.

In *Litchfield v. Ballou, supra,* it was held that "A provision in a state constitution that municipal corporations shall not become indebted in any manner nor for any purpose to an amount exceeding five per cent. of the taxable property therein, forbids *implied* as well as expressed indebtedness, and is as binding on a court of equity as on a court of law." In *Lake Co. v. Rollins, supra,* the words in the constitution of Colorado, "the aggregate amount of indebtedness of any county *for all purposes,*" were construed to be "an absolute limitation upon the power of the county to contract any and all indebtedness, not only for the purposes named in the act, but for every other purpose whatever, including county warrants issued for ordinary county expenses, such as witnesses' and jurors' fees, election costs, charges for board of prisoners, county treasurer's commissions," etc. In *Lake Co. v. Graham, supra,* it was held that "When the constitution of a state imposes upon the municipal corporations within it a limitation of their power to

incur debts, it is not within the power of the legislature of the state to dispense with that limitation, either *directly or indirectly.*" Here the constitutional provision prohibits the city from becoming "indebted in *any manner or for any purpose* to any amount" exceeding five per centum of the assessed valuation. The same language is contained in the constitution of Iowa; and in *Doon v. Cummins, supra,* it was held, in effect, that negotiable bonds, in excess of such limit, issued by a school district, and sold for the purpose of applying the proceeds of the sale *to the payment of an outstanding bonded indebtedness* of the district, pursuant to the statute of Iowa, were void as against one who purchased with knowledge that such limit had been exceeded. In that case Mr. Justice GRAY, speaking for the court, cites five Iowa cases to the effect that the law, as settled by the supreme court of that state, is that such "constitutional restriction includes not only municipal bonds, but all forms of indebtedness, except warrants for money *actually in the treasury,* and perhaps contracts for ordinary expenses *within the limits of the current revenues.*" 142 U. S. 376. The Iowa cases thus cited support the proposition. See, also, *Kane v. Independent School Dist.* 82 Iowa, 5; *First Nat. Bank v. District of Doon,* 86 Iowa, 330. In *Prince v. Quincy,* 105 Ill. 138, it was held that, when such constitutional limit had been reached, the municipality is prohibited from making any contract whereby an indebtedness is created, even for the necessary current expenses in the administration of the affairs and government of the corporation. In *Culbertson v. Fulton,* 127 Ill. 30, it was held that "Where a city enters into a contract to pay a sum of money when certain work [waterworks] shall be done and accepted, the obligation thereby assumed will constitute a debt, within the meaning of the constitutional limitation of its power to incur indebtedness. Such indebtedness will be regarded as having been incurred from the date of the contract, and not postponed

to the time of the completion and acceptance of the work."
"The effect of this constitutional inhibition is to require
cities indebted to the limit fixed by the constitution to carry
on their corporate operations, while so indebted, upon the
cash system, and not upon credit to any extent or any pur-
pose." *Prince v. Quincy*, 128 Ill. 443. In *Beard v. Hop-
kinsville*, 95 Ky. 239; *S. C.* 23 L. R. A. 402, it was held that
"A contract by a city to pay an annual rental for the use
of water hydrants and electric lights is a contracting of
indebtedness, within the meaning of a constitutional limita-
tion, when the city is already indebted beyond the pre-
scribed limit, although the usual and legal income from
taxation and otherwise would be sufficient to pay all the
current expenses, including such rental." In harmony with
the decisions cited, this court has held that "Where a
county is already indebted in a sum exceeding five per cent.
of the value of the taxable property therein, it cannot incur
a further indebtedness for building a courthouse, or for any
other purpose; and a tax levied to pay such further alleged
indebtedness is void." *Hebard v. Ashland Co.* 55 Wis. 145.
As already indicated, the case at bar is clearly distinguish-
able from that class of cases where there is a mere annual
rental for a series of years, and where there is no liability,
except as each year's service is rendered by some person,
company, or corporation, as in *Crowder v. Sullivan*, 128
Ind. 486; *S. C.* 13 L. R. A. 647; *Smith v. Dedham*, 144
Mass. 177. So long as the current expenses of the munici-
pality are kept within the limits of the moneys and assets
actually in the treasury, and the current revenues collected
or in process of immediate collection, the municipality may
be fairly regarded as doing business on a cash basis, and not
upon credit,— even though there may be for a short time
some unpaid liabilities. In other words, a municipality's
capacity for doing business on such cash basis, with out-
standing liabilities, is necessarily measured by the amount

Earles vs. Wells and others.

of cash on hand and the available assets and resources readily convertible into cash to meet the payment of such liabilities as they become due. But the moment an indebtedness is voluntarily created "in any manner or for any purpose," with no money nor assets in the treasury, nor current revenues collected or in process of collection for the payment of the same, that moment such debt must be considered in determining whether such municipality has or has not exceeded the constitutional limit of indebtedness. It appears from the statement that the valuation of the property in the city, as shown by the assessment rolls for 1894, was only $1,114,500; that the bonded indebtedness of the city was $73,000; that the total receipts were only $61,377.78; that the annual disbursements were $43,963.10; that the average rate of taxation was 4.47 per centum; that the amount of tax levied was $51,287.53, and the amount collected $48,294.64. Such being the facts and the law, it is evident that by the contract in question the city attempted to become indebted to an "amount including existing indebtedness in the aggregate exceeding five per centum on the value of the taxable property therein," within the meaning of the constitutional provision quoted, and hence the same is void. The method by which the attempt was made may be regarded as ingenious, but it should be remembered, as indicated in one of the cases cited, that the city could not do by indirection what it could not do directly.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to enter judgment in favor of the plaintiff in accordance with the prayer of his complaint.