STATE EX REL. LA FOLLETTE, Attorney General, Petitioner,
v. REUTER, Director of Finance, Respondent.

*December 2, 1966—January 3, 1967.*

For the petitioner the cause was argued by *William F. Eich,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Andrew C. Damon* of Madison, counsel for the department of resource development.

For the respondent there was a brief by *A. J. Feifarek* and *Van Alstyne, Hoffman & Feifarek,* special counsel, all of Madison, and oral argument by *A. J. Feifarek.*

HANLEY, J. The attorney general seeks a peremptory writ of mandamus to compel the respondent to honor the $54.84 voucher. We deem the prayer for a declaratory judgment on the questions raised of constitutionality to be determinative of all issues to be considered by the court. Such issues are as follows:

1. Does sec. 144.21, Stats., delegate legislative powers to the department in violation of sec. 1, art. IV, Const.?

2. Does sec. 144.21, Stats., authorize the payment of state money for purposes that are not of statewide concern in violation of sec. 2, art. VIII, Const.?

3. Does sec. 144.21, Stats., authorize the lending of the credit of the state in violation of sec. 3, art. VIII, Const.?

4. Does sec. 144.21, Stats., authorize the creation of a public debt in violation of sec. 4, art. VIII, Const.?

5. Does sec. 144.21, Stats., authorize the state to carry on work of internal improvements in violation of sec. 10, art. VIII, Const.?

6. Does sec. 144.21, Stats., authorize municipalities to exceed debt limits in violation of sec. 3, art. XI, Const.?

With reference to the first issue presented, it is the position of the respondent that the powers delegated to the department result in a violation of sec. 1, art. IV, Const., which provides that the legislative powers shall be vested in a senate and assembly.

This court said in *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 185, 193, 60 N. W. (2d) 873, quoting from *People ex rel. Curren v. Schommer* (1945), 392 Ill. 17, 24, 63 N. E. (2d) 744, 748, 167 A. L. R. 1347, 1352, that:

" '. . . it has long been accepted that the legislature may delegate that reasonable measure of authority which is necessary to accomplish the constitutional purpose desired. We hardly see how . . . it can be said that the legislature, which is the voice of the people, has no freedom of action in determining the best methods of giving to the public that service for which it is willing and able to pay. It is the best judge of what is necessary to meet

the needs of the public and in what manner the service shall be directed. . . .' "

In *Olson v. State Conservation Comm.* (1940), 235 Wis. 473, 479, 293 N. W. 262, a similar claim was made in regard to ch. 366, Laws of 1937, which authorized the state conservation commission to "regulate hunting and fishing on and in all interstate boundary waters, except the outlying waters specified in subsection (4) of section 29.01, . . ."

Ch. 366 then referred to existing statutes which provided that the commission shall establish such seasons, size limits, and other conditions governing the taking of fish and game "as will conserve the fish and game supply and insure to the citizens of this state continued opportunities for good fishing, hunting and trapping." In holding that ch. 366, Laws of 1937, did not constitute an unconstitutional delegation of legislative power, this court stated at page 482:

". . . It is clear that the power delegated to the commission by ch. 366, Laws of 1937, authorized the commission to act in such a way *'as will conserve the fish and game supply.'* It thus appears that the legislature declared that there should be a law, and determined the general policy sought to be achieved, and that regulations or orders of the commission expressing such public policy and promulgated by it, should have the force and effect of law. Ch. 366, in our opinion, contains a sufficient standard 'as will conserve the fish and game' and therefore may not be assailed on the ground that it unconstitutionally delegates legislative power."

Secs. 1 and 2 of ch. 614, Laws of 1965, declare the statutory policy and fix the standards for administering the law. It is obvious that no more than a general standard can be prescribed by the legislature. It could not make specific provisions for all items entering into the operation of the financial assistance program for the very reason that the size, extent, and character of the

problems and the curative acts required differ in each area where the evils to be corrected by the act exist.

In *Milwaukee v. Sewerage Comm.* (1954), 268 Wis. 342, 351, 67 N. W. (2d) 624, this court said:

". . . The true test and distinction whether a power is strictly legislative, or whether it is administrative and merely relates to the execution of the statutory law, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done. To the latter, no valid objection can be made."

The responsibility of ascertaining as a matter of fact under the statutory guidelines and principles whether a particular municipality requires financial assistance and which plan is best suited to its particular needs is an administrative act and not the exercise of legislative power.

The legislature acting within the scope of its authority has determined what the law concerning water pollution prevention and abatement shall be. A legislative enactment, sec. 144.21, Stats., goes into operation on the determination of certain facts by the department.

Sec. 144.21, Stats., does not result in an unlawful delegation of legislative authority in violation of sec. 1, art. IV, Const.

The next issue to be determined is whether sec. 144.21 (6) (a), Stats., which provides for payment by the state of one third of the total combined cost of approved projects and net interest and financing cost to those municipalities which finance their own projects contravenes the provisions of sec. 2, art. VIII, Const., in that such appropriation is not for a purpose of statewide concern.

The statewide importance of water pollution abatement in any given locality of the state is obvious since our

rivers, streams, lakes and tributaries are not confined by municipal boundaries. The abatement of water pollution is essential to the health and welfare of all of the people of the state. The primary reason in constructing pollution abatement facilities is to protect the health of all citizens of the state whose need for pure water is essential to life itself.

In determining what are proper expenditures by the state, this court said in *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 185, 216, 60 N. W. (2d) 763:

" ' . . . The existence of *local conditions* which, because of their nature and extent, are of concern to the public as a whole, *the modes of advancing the public interest* by correcting them or avoiding their consequences, *are peculiarly within the knowledge of the legislature,* and to it, and not to the courts, is committed the duty and responsibility of making choice of the possible methods. . . . ' "

In *State ex rel. Martin v. Juneau* (1941), 238 Wis. 564, 570, 571, 300 N. W. 187, this court stated in regard to the home rule section of the state constitution that:

". . . there can be no question but that the promotion and protection of public health is a matter of state-wide concern."

The purpose of the appropriation provided for in ch. 614, Laws of 1965, is clearly public and is a matter of statewide concern.

It is therefore our conclusion that sec. 144.21 (6) (a), Stats., does not violate sec. 2, art. VIII, Const.

We now consider the third issue raised of whether the financial assistance plan results in the state lending its credit in violation of sec. 3, art. VIII, Const., which provides:

"The credit of the state shall never be given, or loaned, in aid of any individual, association or corporation."

In *State ex rel. Wisconsin Development Authority v. Dammann* (1938), 228 Wis. 147, 197, 277 N. W. 278, 280 N. W. 698, this court stated as follows:

"It is our conclusion that the giving or loaning of the credit of the state which it was intended to prohibit by sec. 3, art. VIII, Wis. Const., occurs only when such giving or loaning results in the creation by the state of a legally enforceable obligation on its part to pay to one party an obligation incurred or to be incurred in favor of that party by another party. There is no such giving or loaning of the state's credit within the meaning of that prohibitory provision when all that is done by the state is to incur liability directly or only to such other party as, for example, where the state lawfully employs someone to perform an authorized service for the state."

There is no loaning of state credit (contrary to sec. 3, art. VIII, Const.) unless the state becomes legally obligated for a debt.

Since there is no enforceable legal obligation on the part of the state to pay the obligations of the building corporations or to pay any obligations of the municipalities under their own separate leases, there can be no loaning of the credit of the state.

There is no loaning of credit when one performs a lawful service for the state. In *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 185, 199, 60 N. W. (2d) 873, this court said:

"Respondent argues that the bond-buying public will feel that the state is giving its credit to the turnpike-corporation bonds even though there is no legal obligation on the part of the state, because it will be reasoned that the state could not afford to allow the project to fail. Obviously, this cannot be the test to be applied. The test of a 'legally enforceable obligation' laid down in the *Wisconsin Development Authority Case, supra,* is the only sound one."

We conclude that sec. 144.21, Stats., does not operate so as to extend the credit of the state of Wisconsin in violation of sec. 3, art. VIII, Const.

Next we consider the fourth issue raised of whether sec. 144.21, Stats., creates a state debt in violation of sec. 4, art. VIII, Const., which provides:

"The state shall never contract any public debt except in the cases and manner herein provided."

The respondent concedes cases hold that where there is no legally enforceable obligation there is no debt.

The respondent contends that the terms of sec. 144.21 (6) (a), Stats., are unclear in that they may result in binding the state irrevocably to making the annual payments to the municipalities under this section.

First of all, sub. (6) (a) does not require the department to enter into such agreement with a municipality; it merely authorizes the department to so agree by providing as follows:

"The department may enter into agreement with municipalities to make payments to municipalities from the appropriation made by s. 20.706 (1) (c) . . . ."

The above language similarly makes it clear that any payments to municipalities made under this first alternative plan, shall come from the appropriation made by sec. 20.706 (1) (c), Stats. Thus, the only agreement that can be made under sub. (6) (a) is an agreement to pay municipalities out of the funds appropriated by sec. 20.706 (1) (c).

This court in *State ex rel. Board of Regents v. Donald* (1916), 163 Wis. 145, 147, 157 N. W. 782, said:

"Undoubtedly the legislature can repeal a statute carrying an appropriation and thus put an end to the appropriation, so far as it is unexpended, at any time."

Sec. 144.21, Stats., clearly provides for financing through nonprofit corporations such as the state building corporation and the Wisconsin turnpike corporation; and it has been held that they are not agencies of the state nor are their obligations debts of the state. *State ex rel.*

*Thomson v. Giessel* (1955), 271 Wis. 15, 72 N. W. (2d) 577; *Glendale Development v. Board of Regents* (1960), 12 Wis. (2d) 120, 135, 106 N. W. (2d) 430.

Sec. 144.21 (6) (b), Stats., which is nothing more than the lease and sublease plan, does not create a legally enforceable obligation. The reason for this is stated in *State ex rel. Thomson v. Giessel* (1954), 267 Wis. 331, 345, 65 N. W. (2d) 529, as follows:

"Historically the common-law principles governing the landlord-tenant relationship did not recognize future rent as a presently existing debt or liability."

Therefore it follows that no state debt is created because "future rent" under the leases does not become a debt until the land and pollution facilities have been used.

It is further stated in *State ex rel. Thomson v. Giessel* (1955), 271 Wis. 15, 32, 33, 72 N. W. (2d) 577, that:

"It is to be noted also that the state is not under a legally enforceable obligation to pay rent in any of the causes of action. Under provision of ch. 144, Laws of 1955, particularly secs. 14.89 (1) (c), 36.06 (6) (b), Stats., it is expressly provided that the obligation of the state to pay rent to a building corporation shall be subject to available appropriations. Since the availability of appropriations is within the sole control of the state, this condition renders the state's rental obligation entirely optional and within its discretion. No legally enforceable obligation results."

Insofar as all of the constitutional challenges are concerned, it may arguably be said that the state encourages the works envisioned by sec. 144.21, Stats., but the state is not a party to such action.

We now consider the fifth issue raised of whether sec. 144.21, Stats., authorizes the state to carry on work of internal improvements in violation of sec. 10, art. VIII, Const., which provides:

"The state shall never contract any debt for works of internal improvement, or be a party in carrying on such works; . . ."

The question of what is considered to be a work of internal improvement within the meaning of sec. 10, art. VIII, Const., was considered by this court in the case of *State ex rel. Owen v. Donald* (1915), 160 Wis. 21, 79, 151 N. W. 331, where it was said:

"In *Rippe v. Becker*, 56 Minn. 100, 117, 57 N. W. 331, the precise question we now have under consideration was carefully considered. As we have heretofore said the result there was fully approved here. The opinion of the court, written by MITCHELL, J., is well abridged, as to the principle declared, in the syllabus:

"' "Works of internal improvement," as used in the constitution, means, not merely the construction or improvement of channels of trade and commerce, but any kind of public works, except those used by and for the state in performance of its governmental functions such as a state capitol, state university, penitentiaries, reformatories, asylums, quarantine buildings, and the like, for the purposes of education, the prevention of crime, charity, the preservation of public health, furnishing accommodations for the transaction of public business by state officers, and other like recognized functions of state government.' "

The foregoing definition of internal improvement was approved and adopted by this court in *State ex rel. Thomson v. Giessel* (1954), 267 Wis. 331, 343, 65 N. W. (2d) 529.

In *State ex rel. Martin v. Juneau, supra,* at page 572, this court said:

". . . The pollution of the waters of the state is as a matter of common knowledge inimical to public health."

In *Norway v. State Board of Health* (1966), 32 Wis. (2d) 362, 370, 145 N. W. (2d) 790, this court said:

". . . The pollution of public waters is a matter of great public concern and inimical to public health."

In *Visina v. Freeman* (1958), 252 Minn. 177, 193, 89 N. W. (2d) 635, 649, the Minnesota supreme court said:

". . . In determining whether an act of the legislature contravenes a constitutional provision we should endeavor to interpret the provision in the light of existing conditions, particularly when those conditions could not have been foreseen at the time the constitution was adopted. . . . The limitation on spending public money for internal improvements obviously was not intended to circumscribe such activity. . . .

". . . If the language of the constitution permits, we should give to it that meaning which would have been expressed when adopted if the present conditions that are involved had then existed or had been within the contemplation of those who drafted the instrument."

Even though the court in *Visina, supra,* was considering the problem of port facilities the reasoning seems more appropriate to the case presented.

In *Appeal of Van Dyke* (1935), 217 Wis. 528, 544, 259 N. W. 700, 98 A. L. R. 1332, this court was faced with the question of whether ch. 29, Laws of Sp. Sess. 1931–1932, known as the emergency unemployment relief income tax law, was unconstitutional for the reason, among others, that it violated the internal improvements clause of the Wisconsin constitution. Sec. 2 (2) of the act provided for payments from the general fund to counties, cities, towns and villages of 25 percent of their expenditures for the labor costs of public works such as forestry works, forest fire protection facilities, highway and bridge construction, and similar projects. In passing on this question, the court stated:

". . . It is true that some of the moneys which were paid out by the industrial commission, pursuant to the provision of sec. 2 (2) of the act, which permitted reimbursement to the county or city of twenty-five per cent of the labor cost of public works undertaken to provide for the unemployed, went into such public works, but the primary purpose of the state was not to become a party to carrying on works of internal improvements, but to reimburse the counties and cities which had made work simply for the purpose of providing employment to the unemployed."

The *Van Dyke Case,* along with *State ex rel. New Richmond v. Davidson* (1902), 114 Wis. 563, 88 N. W. (2d) 596, 90 N. W. 1067, were later characterized by this court as sustaining legislative enactments by which the state promoted or encouraged the making of internal improvements through appropriations of state funds. See *State ex rel. Wisconsin Development Authority v. Dammann, supra.*

We conclude that matters pertaining to the abatement of water pollution are governmental functions of the state of Wisconsin and that water pollution prevention and abatement facilities are not works of internal improvement within the prohibition of sec. 10, art. VIII, Const.

This brings us to the consideration of the last issue raised as to whether sec. 144.21, Stats., authorizes municipalities to exceed debt limits in violation of sec. 3, art. XI, Const., which provides:

"SECTION 3. Cities and villages organized pursuant to state law are hereby empowered, to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village. The method of such determination shall be prescribed by the legislature. No county, city, town, village, school district or other municipal corporation may become indebted in an amount that exceeds an allowable percentage of the taxable property located therein equalized for state purposes as provided by the legislature. In all cases the allowable percentage shall be five per centum except as follows: (a) For any city authorized to issue bonds for school purposes, an additional ten per centum shall be permitted for school purposes only, and in such cases the territory attached to the city for school purposes shall be included in the total taxable property supporting the bonds issued for school purposes. (b) For any school district which offers no less than grades one to twelve and which at the time of incurring such debt is eligible for the highest level of school aids, ten per centum shall be permitted. Any county, city, town, village, school district, or other municipal corporation incurring any in-

debtedness as aforesaid, shall before or at the time of doing so, provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same; except that when such indebtedness is incurred in the acquisition of lands by cities, or by counties having a population of one hundred fifty thousand or over, for public, municipal purposes, or for the permanent improvement thereof, the city or county incurring the same shall, before or at the time of so doing, provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within a period not exceeding fifty years from the time of contracting the same. An indebtedness created for the purpose of purchasing, acquiring, leasing, constructing, extending, adding to, improving, conducting, controlling, operating or managing a public utility of a town, village or city, and secured solely by the property or income of such public utility, and whereby no municipal liability is created, shall not be considered an indebtedness of such town, village or city, and shall not be included in arriving at such five or eight per centum debt limitation."

The above constitutional provision places a debt limit upon municipal corporations. The apparent reason for the debt limitation is to prevent municipal bankruptcy which would result from the creation of a fiscal burden beyond the financial capacity of local taxpayers. Sec. 144.21, Stats., authorizes the department to enter into agreements with municipalities whereby the municipalities would sublease from the department land and improvements for which the state has entered into lease and sublease agreements with a nonprofit corporation. The same arguments pertaining to whether or not the state of Wisconsin incurs a debt by entering into lease and sublease agreements with the corporation are applicable here insofar as the question of municipal debt is concerned.

This court held that the payment of future rent is not a presently existing debt of the state within the meaning

of the term "indebtedness" referred to in the constitution. *State ex rel. Thomson v. Giessel* (1954), 267 Wis. 331, 346, 65 N. W. (2d) 529; *State ex rel. Thomson v. Giessel* (1955), 271 Wis. 15, 28, 29, 72 N. W. (2d) 577.

The terms "debt" and "indebtedness" as they appear in sec. 3, art. XI, and sec. 4, art. VIII, Const., have the same meaning in regard to both state and municipal debts. The leading case on the subject of future rent is *Walla Walla City v. Walla Walla Water Co.* (1898), 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341.

In holding that the city by its contract with the water company did not become indebted in the constitutional sense until it had the use of the premises for each successive rental term, the court stated at page 20:

"There is a distinction between a debt and a contract for a future indebtedness to be incurred, provided the contracting party perform the agreement out of which the debt may arise. There is also a distinction between the latter case and one where an absolute debt is created at once, as by the issue of railway bonds, or for the erection of a public improvement, though such debt be payable in the future by instalments. In the one case the indebtedness is not created until the consideration has been furnished; in the other the debt is created at once, the time of payment being only postponed."

Sec. 144.21 (6) (b), Stats., requires that even annual payments be made by the municipality in its lease or sublease from the department, and it is contended by the respondent that this creates a debt. In the *Walla Walla Case, supra,* the ordinance provided specifically that the city "shall pay" the sum of $1,500 a year for a period of twenty-five years. The supreme court held, however, that this annual rental did not become an indebtedness until the use of the subject of the rental agreement had been accomplished by the city. In the instant situation, no liability for rent can accrue to the municipality until it has received the use of the water pollution facilities.

Until such time as the use and enjoyment of these facilities occurs, no rent can be payable. The distinction here, which has been recognized by this court in *State ex rel. Thomson v. Giessel* (1954), 267 Wis. 331, 65 N. W. (2d) 529, is between a debt, which arises only when enjoyment and use of the premises is had by the lessee, and a contract for a future debt, which is no present debt at all. Under the rules enunciated by this court there can be no liability beyond actual occupancy and use.

The provisions of sec. 144.21 (8) (b), Stats., do not operate to change the future rental payments into a debt within the meaning of the constitutional provisions. Sec. 144.21 (8) (b) merely relates to the collection of annual rent after the use of the premises has been enjoyed by the municipality (*e.g.*, after the rental instalment has become a "debt"), and after a default has occurred. The payments are to be made annually pursuant to sec. 144.21 (6) (b), and there is nothing in the act to suggest that anything is contemplated other than annual rental payments for the annual use and enjoyment of the premises on the part of the municipality.

Sec. 144.21 (7) (b), Stats., is the only portion of the financial assistance program relating to rental payments on the subleases by the department and the municipality.

A reading of that section clearly reveals that the rentals for both the lease or sublease from the corporation to the department and the lease or sublease of the improved land from the department to the municipality are subject to available appropriations. The provisions made by sec. 144.21 (8) (b), Stats., are not "enforcement provisions." They merely provide a method of repayment after, and only after, a default has occurred. That is, only after the municipality has enjoyed the use and occupancy of the premises for a year and has failed to pay the specified rental therefor. Clearly, rent to be paid in the future is not a present debt nor a liability.

In *State ex rel. Thomson v. Giessel* (1955), 271 Wis. 15, 33, 34, 72 N. W. (2d) 577, this court considered the question of whether the state building corporation's pledging of rentals from the state office building to the lending institution which was legally enforceable in the constitutional sense and also whether the state's agreement to charge rentals sufficient to pay all costs and rent payable by it under the lease is a legally enforceable obligation. The court held that the state may obligate itself to impose charges sufficient to meet a rental obligation without creating state debt. A promise by the state to maintain rates of imposed charges sufficient to produce revenues large enough to make specified payments does not constitute state debt.

Sec. 144.21 (8), Stats., merely constitutes a method of collecting rental payments only after the municipality has had the use of the improved premises and after a default on the part of the municipality has occurred.

We conclude that under the established rules governing leases which have been applied to similar financing programs by this court, it cannot be said that the above subsection creates a debt on the part of the municipality. The constitutional provisions relating to municipal debt limitations are not violated by the act.

We hold that sec. 41, ch. 614, Laws of 1965, which creates sec. 144.21, Stats., is a valid enactment not in violation of the public debt and internal improvement sections of the Wisconsin constitution and that under the terms thereof the said Clarence A. Reuter, as director of the bureau of finance, is required and has the right to honor, audit and approve any and all warrants, requisitions, purchase orders, and allotment requests issued to him by the department of resource development, pursuant to said statute, and to give effect and take all steps necessary to carry out the aforementioned appropriation as provided by ch. 614, Laws of 1965.

*By the Court.*—The petition for a peremptory writ of mandamus is granted; and a declaratory judgment granted adjudging that sec. 41, ch. 614, Laws of 1965, which creates sec. 144.21, Stats., is a valid enactment.