ED JACKAMONIS, Speaker Wisconsin State Assembly
On behalf of the Assembly Committee on Organization, you ask whether the Wisconsin Constitution's prohibition on the expenditure of state funds for "works of internal improvement" applies to the use of state funds to dredge the bed of a navigable river to alleviate periodic flooding.
Wisconsin Constitution art. VIII, sec. 10, provides in part that "[t]he state shall never contract any debt for works of internal improvement, or be a party in carrying on such works."
The Wisconsin Supreme Court in 1915 adopted the following definition of internal improvements: *Page 177 
 "`Works of internal improvement,' as used in the constitution, means, not merely the construction or improvement of channels of trade and commerce, but any kind of public works, except those used by and for the state in performance of its governmental functions, such as a state capitol, state university, penitentiaries, reformatories, asylums, quarantine buildings, and the like, for the purposes of education, the prevention of crime, charity, the preservation of public health, furnishing accommodations for the transaction of public business by state officers, and other like recognized functions of state government."
State ex rel. Owen v. Donald, 160 Wis. 21. 79, 15 N.W. 331 (1915) (emphasis supplied).
Since 1915 both the Wisconsin Supreme Court and my predecessors have often been asked to determine whether specific state expenditures are exempt from the constitutional prohibition because they perform a governmental function. See Eich, A NewLook at the Internal Improvements and Public Purpose Rules, 1970 Wis. L. Rev. 1113. Although the answers to these questions have sometimes conflicted, two central concepts govern the resolution of the issue. First, constitutional rules are not immutable: times change, and courts have an obligation to interpret constitutional provisions in the light of present-day conditions that could not possibly have been foreseen by the drafters of the constitution. Wisconsin Solid Waste Recycling Auth. v. Earl,70 Wis.2d 464, 490, 235 N.W.2d 648 (1975). Moreover,
 The impact of civilization upon the social structure may well be such that by mere passage of time, an activity once deemed within this constitutional ban becomes an activity which can no longer be said to be within it. . . . Experience may well show that if the problem is to be met at all it must be met by the government.
30 Op. Att'y Gen. 343, 345-46 (1941).
The second key concept concerns the purpose of the state expenditure in question. In determining whether an expenditure is for a work of internal improvement, focus should be less on the end result or object of the expenditure than on the reason why
state funds are being used — the "governmental function." This distinction between *Page 178 
the product and the purpose of the expenditure was sharply drawn in 58 Op. Att'y Gen. 120, 135 (1969), which advised that state financial participation in the construction of the Milwaukee Convention Center would have to be limited to "the clearly identifiable portion of the center allocated to use as a state operated tourist center or some similar state governmental function." The product-purpose distinction is likewise relevant to the question you pose about dredging activities in the Manitowoc River. The expenditure of state funds for dredging, damming or any other project can only be sanctioned if the primary purpose of the work is to fulfill a governmental function, and not to provide a private benefit.
You state that the purpose of the proposed dredging would be to alleviate periodic river flooding. In 57 Op. Att'y Gen. 228 (1968), I advised the Legislative Council that the appropriation of state funds to municipalities to construct dams for flood control purposes did not violate the internal improvements clause. In so advising, I departed from earlier opinions to the effect that state-constructed dams and levees were prohibited works of internal improvement. This departure was made in recognition of both the changing needs of our society and the Wisconsin Supreme Court's decision in State ex rel. La Follettev. Reuter, 33 Wis.2d 384, 403, 147 N.W.2d 304 (1967), that water pollution abatement is a governmental function under the internal improvements clause. I concluded:
 In my opinion there can be little doubt that construction of a flood control dam must today be viewed as furthering a governmental function. We need look no further than the public health functions relied upon in State ex rel. La Follette v. Reuter. Not only is a direct threat to the public health found in flood damage to life and property, but it is also well known that floods create significant dangers to public health by such indirect effects as pollution of the water supply.
 Flood control dams also protect public safety. The definition of works of internal improvement adopted in La Follette v. Reuter does not expressly include protection of public safety as a governmental function outside the scope of the internal improvement prohibition. It does, however, include "other like recognized functions of state government." I know of no more universally recognized function of government at any level than the protection of public safety and I must conclude that it is *Page 179 
within the governmental roles anticipated by the court in the above definition.
57 Op. Att'y Gen. at 230 (emphasis supplied).
I find nothing in subsequent court decisions to cause a change in my 1968 opinion. Perhaps your concern in asking this question is that dredging a navigable river for flood control is not as tangible a "work" of internal improvement as building a dam or a pollution abatement facility. As discussed above, however, it is the purpose — flood control — that governs, not the end product. Moreover, it could even be argued that dredging is mere maintenance of the status quo instead of a work of internal improvement. See 55 Op. Att'y Gen. 61 (1966); 30 Op. Att'y Gen. 343 (1941).
Since my 1968 opinion, the Wisconsin Supreme Court has found a "governmental function" exempting state expenditures from the internal improvements clause for purposes as broad and diverse as providing housing and recycling solid waste. State ex rel. Warrenv. Nusbaum, 59 Wis.2d 391, 208 N.W.2d 780 (1973); WisconsinSolid Waste Recycling Auth. v. Earl, 70 Wis.2d 464,235 N.W.2d 648 (1975). I see no reason to change my 1968 opinion that the construction of dams to control flooding does not violate the internal improvements clause, and that opinion directly controls the fact situation you presented.
BCL:MS