LOWELL B. JACKSON, Secretary Department of Industry, Labor andHuman Relations
You have asked for my opinion concerning the constitutionality of borrowing money after April 1, 1982, from the federal government in order to replenish Wisconsin's nearly depleted unemployment reserve fund, which is on deposit with the United States Treasury Department. Based upon the analysis which follows, it is my opinion that borrowing the federal funds, under the arrangements prescribed by federal statute, is not prohibited by the Wisconsin Constitution.
In order to answer your question, it is necessary to examine and understand the statutory provisions that govern the borrowing and repayment of these federal funds. The arrangements for borrowing and repaying the federal funds are prescribed by federal law. 42 U.S.C. § 1321 (1974), as amended by the Omnibus Budget Reconciliation Act, Pub.L. No. 97-35, sec. 2407,95 Stat. 879 (1981). Money is to be advanced to the state's unemployment reserve fund from the federal unemployment account, if the Governor applies for an advance and submits an estimate of the amount needed to pay unemployment benefits. 42 U.S.C. § 1321
(a)(1) and (b). The money advanced is to be repaid in one of three ways. 42 U.S.C. § 1321 (a)(1).
First, the Governor at any time may transfer funds from the state's unemployment account to the federal unemployment account.42 U.S.C. § 1322.
An alternative method for repaying the money is for the federal government to reduce the employers' offset credit. 42 U.S.C. § 1101
(d)(1). Because Wisconsin's unemployment compensation law is certified and approved by the Secretary of Labor,26 U.S.C. § 3304, Wisconsin employers enjoy an offset credit applied to their federal unemployment taxes. 26 U.S.C. § 3302. This method of repayment provides that the additional federal revenues generated by reduction of the employers' offset credit will be used to repay the federal advances. 42 U.S.C. § 1101
(d)(1). That is, Wisconsin employers who, for example, enjoy an offset credit of 2.7 percent applied against their federal unemployment taxes, would have an offset credit of only 2.4 percent. 26 U.S.C. § 3302 (c). The other .3 percent would be applied to repay the money advanced by the Secretary *Page 97 
of the Treasury. In succeeding years, if the funds still are not repaid in full, the offset credit would be reduced, for example, by .6 percent, and then by .9 percent, and so forth until the funds are repaid in full. Id.
The final method of repayment involves money in the federal employment security administration account, which, if certain circumstances exist, must be transferred to the unemployment account of each state. 42 U.S.C. § 1103. Money which otherwise would be transferred from the employment security administration account to the state's unemployment account must be diverted to repay any outstanding advances. 42 U.S.C. § 1103
(b)(2).
The money advanced to the state's unemployment reserve fund will accrue interest. Omnibus Budget Reconciliation Act, Pub.L. No. 97-35, sec. 2407, 95 Stat. 879 (1981). This recent amendment provides that "[e]xcept as otherwise provided in this subsection, each State shall pay interest on any advance made to such State."Id, sec. 2407 (b)(1). Interest will not accrue with respect to any advance if: (1) such advance is repaid in full on or before September 30 of the calendar year in which the advance was made; and (2) no other advance was made to the state during such calendar year and after the date on which the repayment of the advance was made. Id., sec. 2407 (b)(2). Under this amendment, the state is free to pay the interest from any source, except the unemployment fund. Id., sec. 2407 (b)(5). The interest payments are due on the first day following the fiscal year in which the advances were made. Id., sec. 2407 (b)(3)(A)
The Legislature, as you know, has provided for payment of this interest from money the Department of Industry, Labor and Human Relations receives as interest and penalties on delinquent payments, ch. 36, sec. 1, Laws of 1981, but I understand that this money will not be sufficient to pay for all the interest due on the anticipated advances. Also, in this regard, you have informed me that the Unemployment Compensation Advisory Council recently recommended an amendment to ch. 108, Stats., which would authorize the Department to levy an assessment on employers for payment of any interest that may accrue on the advances of federal money.[1] My *Page 98 
opinion herein assumes enactment of a bill substantially equivalent to the Advisory Council's proposed amendment.
The precise question that needs to be answered is whether the borrowing of federal money, under the statutory arrangements described above, is barred by either Wis. Const. art. VIII, sec.3 or 4. I will address this question in two parts: (1) are the advances of federal funds, i.e., the principal, without the payment of any interest, barred by these sections of the Wisconsin Constitution? and (2) if not, then does the payment of interest on these advances violate these constitutional provisions?
Wisconsin Constitution art. VIII, sec. 3, provides that "[e]xcept as provided in s. 7 (2)(a), the credit of the state shall never be given, or loaned, in aid of any individual, association or corporation." The giving or loaning of the state's credit prohibited by this section "occurs only when such giving or loaning results in the creation by the state of a legally enforceable obligation on its part to pay to one party an obligation incurred or to be incurred in favor of that party by another party." State ex rel. Wisconsin Dev. Authority v.Dammann, 228 Wis. 147, 197, 277 N.W. 278, 280 N.W. 698 (1938). It is firmly established that there is no loaning of the state's credit, in violation of sec. 3, unless the state becomes legally obligated for a debt. State ex rel. Warren v. Nusbaumr,59 Wis.2d 391, 431-32, 208 N.W.2d 780 (1973); State ex rel. Bowman v.Barczak, 34 Wis.2d 57, 73, 148 N.W.2d 683 (1967); State ex rel.La Follette v. Reuter, 33 Wis.2d 384, 398, 147 N.W.2d 304
(1967).
Wisconsin Constitution, art. VIII, sec. 4, provides that "[t]he state shall never contract any public debt except in the cases and manner herein provided." A debt within the meaning of this section only *Page 99 
exists if there is a legally enforceable obligation on the part of the state. Wisconsin Solid Waste Recycling Auth. v. Earl,70 Wis.2d 464, 482, 235 N.W.2d 648 (1975); Nusbaum,59 Wis.2d at 428; Reuter, 33 Wis.2d at 399.
It is my opinion that borrowing the funds from the federal government, under the arrangements prescribed by federal statute, would not contravene either Wis. Const. art. VIII, sec. 3 or 4. For there to be a violation of either section, there must be a legally enforceable obligation on the part of the state. Nusbaum,59 Wis.2d at 431-32; Reuter, 33 Wis.2d at 399. None of the three alternative methods of repayment render the state legally obligated to repay the funds advanced to the unemployment reserve fund. The first method provides that the Governor may transfer funds from the state's unemployment account to the federal unemployment account. 42 U.S.C. § 1322. The Governor, however, is not legally required to make such a transfer. It is strictly optional or a matter of his discretion. Since no state debt can be created where payment of state funds[2] is to be made solely at the state's option, Nusbaum, 59 Wis.2d at 430;State ex rel. Thomson v. Giessel, 271 Wis. 15, 43-44,72 N.W.2d 577 (1955); Perrigo v. City of Milwaukee, 92 Wis. 236, 241,65 N.W. 1025 (1896), this optional method of repayment does not conflict with either Wis. Const. art. VIII, sec. 3 or 4.
The second alternative is that the money will be repaid by the federal government reducing the employers' offset credits against their federal unemployment taxes. 42 U.S.C. § 1101 (d)(1). The additional revenues generated by this reduction in the offset credit will be used to repay the funds borrowed. Id. This method of repayment yields federal, not state, money, similar to ordinary federal tax revenues. Because the money borrowed will be repaid with federal rather than state funds, no state debt is created. Under this method of repayment, it is the employers, not the state, who will bear the burden, through a reduction in their offset credit, of repaying the money borrowed. *Page 100 
Finally, money which otherwise would be transferred from the employment security administration account to the state's unemployment account is to be used to repay any outstanding advances. 42 U.S.C. § 1103 (b)(2). The employment security administration account consists of money appropriated from the United States Treasury. 42 U.S.C. § 1101 (a) and (b). Because this alternative uses federal, not state, money to repay the advances, there can be no infringement of either Wis. Const. art. VIII, sec. 3 or 4.
Under the arrangements prescribed by federal statute, the state is not legally obligated to repay the advances of federal money. The money may be repaid from the unemployment reserve fund, which is made up entirely of employer contributions, but this is optional. If the Governor elects not to repay the advances with money from the unemployment reserve account, the advances will be repaid with federal funds, either through a reduction in the employers' offset credit or by diverting money from the employment security administration account. Since repayment of the advances with state funds is not required, there is no infringement of either Wis. Const. art. VIII, sec. 3 or 4.
More difficult to resolve, under Wis. Const. art. VIII, secs. 3
and 4, is the issue of interest due on the advances of federal money. The state is liable for payment of this interest, unless the money advanced is repaid by September 30 of the same calendar year and no subsequent advances are made. Omnibus Budget Reconciliation Act, Pub.L. No. 97-35, sec. 2407, 95 Stat. 879
(1981). To determine whether such a liability for interest is barred by Wis. Const. art. VIII, sec. 3 or 4, requires an examination of the purpose of these constitutional sections and the definition of debt within the meaning of these provisions.
The purpose of the constitutional prohibition against incurring state debt is to require state government to carry on its operations on a cash basis rather than on credit. Cf: Earles v.Wells, 94 Wis. 285, 298, 68 N.W. 964 (1896); Graham v. Board ofExaminers of State, 116 Mont. 584, 155 P.2d 956, 960 (1945); Morris, Evading Debt Limitations With Public BuildingAuthorities: The Costly Subversion of State Constitutions, 68 Yale L.J. 234 (1958-59). So long as the state's current expenses are kept within the limits of the funds and assets in the treasury and the current revenues collected or in the process of immediate collection, the state is; deemed to be doing business on a *Page 101 
cash basis and not on credit. Cf. Earles, 94 Wis. at 298-99. This is true even though there may be some unpaid liabilities for a short period of time. Id.
The definition of "debt"[3] is a functional one that derives directly from the purpose served by the constitutional provisions restricting state debt. It is defined to include "all absolute obligations to pay money, or its equivalent, from funds to be provided, as distinguished from money presently available or inprocess of collection and so treatable as in hand" (emphasis added). State ex rel. Owen v. Donald, 160 Wis. 21, 59,151 N.W. 331 (1915), citing to Earles, 94 Wis. at 298; and Doon Townshipv. Cummins, 142 U.S. 366, 376 (1892); Nusbaum, 59 Wis.2d at 428. In the constitutional sense, then, a debt is an absolute obligation which will be satisfied or discharged out of future appropriations. Id. Conversely, an obligation which will be satisfied out of money that is presently available, i.e., in the state treasury, or money that is in the process of being collected,[4] e.g., through taxation, is not a debt in the constitutional sense. Id.; Rice v. City of Milwaukee,100 Wis. 516, 519-20, 76 N.W. 341 (1898); Earles, 94 Wis. at 298; Smith v.Town of Dedham, 144 Mass. 177, 10 N.E. 782, 787 (1887); In reIncurring of State Debts, 19 R.I. 610, 37 A. 14, 15 (1896). Such an obligation is not an unconstitutional debt, because the state or municipality is regarded as doing business on a cash basis, and not on credit. Rice, 100 Wis. at 519-20.
It is my opinion that the state's obligation to pay interest on the advances, while perhaps a debt in the ordinary sense, does not create an unconstitutional debt barred by Wis. Const. art. VIII, sec. 3 or 4. The amendment to ch. 108, Stats., proposed by the Unemployment Compensation Advisory Council, assuming it is enacted into law, along with ch. 36, sec. 1, Laws of 1981, will appropriate sufficient revenues to satisfy the state's interest payments. It appears that these revenues will either be collected or in the process of being collected *Page 102 
when the interest payment comes due on the first day following the fiscal year in which the advances were made.[5] Although the state is legally obligated to pay the interest, this obligation is not a debt in the constitutional sense, because it will be satisfied with revenues that are either presently available or in the process of collection. Donald160 Wis. at 59; Rice, 100 Wis. at 519-20; Earles, 94 Wis. at 298. In this regard, the state will be carrying on its operations on a cash basis, and not on credit, in accordance with the mandate of the Wisconsin Constitution.
BCL:NS
[1] The proposed amendment provides as follows:
 SECTION 108.19 (1m) and (1n) of the statutes are created to read:
 (1m) The department shall, from time to time, determine any interest due on advances from the federal unemployment account under Title XII of the social security act to the unemployment reserve fund. Each employer subject to this chapter shall promptly pay an assessment, at the rate determined by the department, to the interest account of the unemployment administration fund created in s. 108.20, upon receipt by the employer of written notice of the department's determination. The amount of an employer's assessment shall be the product of the rate multiplied by the gross wages paid by the employer for a period of time determined by the department.
 (In) The department shall publish as a class I notice under ch. 985 within 10 days such determinations as specified in sub. (1m).
[2] It should be noted that the unemployment reserve fund is made up entirely of employer contributions. Sec. 108.16, Stats. So, even if the Governor was required to repay the advances from this fund, a state debt still would not be created, because the burden of repaying the advances falls on employers. and not on the state or state funds.
[3] The terms "debt" and "indebtedness" in Wis. Const. art. XI, sec. 4 have the same meaning in regard to both state and municipal debts. Reuter, 33 Wis.2d at 405. Accordingly, the Wisconsin Supreme Court's holdings construing the meaning of "debt" by a municipality in art. XI, sec. 3, apply to the definition of "debt" by the state in art. VIII, sec. 4.
[4] Money that is in the process of being collected is treated as being constructively in the state treasury and thus available to be appropriated McFarland v. Barron, 83 S.D. 639,164 N.W.2d 607, 609 (1969): In re State Warrants, 6 S.D. 518, 62 N.W. 101,104 (1895).
[5] Money is already appropriated for payment of the interest by ch. 36, sec. 1, Laws of 1981. In addition, the Advisory Council's proposed amendment would require employers to promptly pay an assessment for the interest when notified to do so by the Department of Industry, Labor and Human Relations.