OPINIONS given by the judges of the Supreme Court to the
Governor pursuant to Article 10, section 3, of the Constitu-
tion of Rhode Island.

## IN RE THE INCURRING OF STATE DEBTS.

In the absence of any authority conferred by the General Assembly neither the
General Treasurer nor any executive officer of the State can incur a State debt
by overdrawing the bank account of the State.

The Constitution of Rhode Island, Art. 4, § 13, which provides that " The Gen-
eral Assembly shall have no power hereafter, without the express consent of
the people, to incur State debts to an amount exceeding fifty thousand dollars,
except in time of war, or in case of insurrection or invasion," does not prohibit
the General Assembly from making appropriations or authorizing the expen-
diture of money to an amount exceeding fifty thousand dollars for the neces-
sary expenses of the State and the public benefit, providing such appropriations
and expenditures, except in the exigencies specified, do not at any time exceed

by more than fifty thousand dollars the income of the State derived from taxes and other sources.

The word "people" in Art. 4, § 13, of the Constitution, means all the electors, registry voters as well as taxpayers.

The Constitution of Rhode Island, Art. 4, § 13, is as follows :

Sec. 13. The General Assembly shall have no power, hereafter, without the express consent of the people, to incur State debts to an amount exceeding fifty thousand dollars, except in time of war, or in case of an insurrection or invasion ; nor shall they in any case, without such consent, pledge the faith of the State for the payment of the obligations of others. This section shall not be construed to refer to any money that may be deposited with the State by the government of the United States.

In response to a communication from the Governor the judges of the Supreme Court gave the following opinion, May 25, 1896.

*To His Excellency Charles Warren Lippitt, Governor of the State of Rhode Island and Providence Plantations.*

We have received from your Excellency communications asking our opinion on certain questions stated below :—

First.—In view of the provision of article 4, section 13, of the Constitution, has the General Treasurer or any of the executive officers of the State the power to incur State debts by overdrawing the bank account of the State, or in any other form without any action of the General Assembly ?

We think it is clear that neither the General Treasurer nor any executive officer of the State can incur any debt which will bind the State, and so become a State debt, except in so far as his action creating it is authorized by law. We know of no existing law which authorizes an overdraft of the bank account of the State by the General Treasurer or any other executive officer of the State, and we therefore answer so much of the question in the negative. Whether either of such officers may incur a debt in any other form which will bind the State depends, as we have said, on whether he is authorized to do so by law. In the absence of

such authority he cannot incur such a debt without the action of the General Assembly giving the authority.

Second.—In view of said article and section, can the General Assembly, in time of peace, and when insurrection or invasion do not exist, incur State debts or borrow money in any form in behalf of the State to an amount exceeding fifty thousand dollars, without first obtaining the consent of the people?

The section expressly provides that "The General Assembly shall have no power, hereafter, without the express consent of the people, to incur State debts to an amount exceeding fifty thousand dollars, except in time of war or in case of insurrection or invasion." We are of the opinion, therefore, that the question must be answered in the negative. But in thus answering we do not mean to be understood that the General Assembly may not make appropriations or authorize the expenditure of money to an amount exceeding the sum named. The power of taxation resides in the General Assembly, and therefore it has power to raise by taxation such sums as it may deem necessary for the expenses of the State and the public benefit; and it may appropriate or authorize expenditure of the moneys so raised for the purposes for which they are raised, and even, as we think, in anticipation of their actual payment into the State treasury. What we do mean to say is that, in our opinion, the General Assembly cannot, at any time, except in the exigencies specified, borrow money or authorize the expenditure of money, or, in the language of the section, incur State debts, to an amount exceeding by more than fifty thousand dollars the income of the State for the current year derived from taxes or other sources.

Third.—Does the word "people," as used in said section, mean the taxpayers and the registry voters—in other words, all the electors—or does it mean the taxpayers alone, in accordance with the proviso at the end of article 7, section 1, in amendment of article 2, section 2, to wit, that no person shall at any time be allowed to vote . . . . upon any proposition to impose a tax or for the expenditure of money, in any town or city, unless he shall within the year next pre-

ceding have paid a tax assessed upon his property therein valued at least at one hundred and thirty-four dollars.

The Constitution in its preamble starts out, "We, the people of the State," etc.   In article 1, section 2, it is declared that all governments are instituted for the protection, safety and happiness of the people.   In the same article, section 6, it is further declared that the right of the people to be secure in their persons, papers and possessions, against unreasonable searches and seizures, shall not be violated.   And again in section 17, "The people shall continue to enjoy and freely exercise all the rights of fishery, and the privileges of the shore, to which they have been heretofore entitled under the charter and usages of the State," etc.   These illustrations, and others might be given, show that the term "people," as used in the Constitution, is broad and comprehensive, comprising in most instances all the inhabitants of the State. Article 2 as amended by article 7, however, defines the qualifications necessary for electors ; and, inasmuch as the Constitution provides no mode for obtaining the consent of the people except by the expression of it through the votes of the electors, we think that the consent of the people mentioned in article 4, section 13, means the consent of the electors manifested by the majority of their votes.   We find nothing to warrant its restriction to such of the electors as are taxpayers, and we are of the opinion, therefore, that the word "people," in the section under consideration, is to be construed to include registry voters as well as taxpayers.

Moreover, the proviso at the end of article 7, section 2, seems to restrict the right of voting to taxpayers only upon a proposition to impose a tax or for the expenditure of money in a town or city, and so does not in terms extend to a proposition to authorize the General Assembly to incur a State debt in excess of fifty thousand dollars.

<div style="text-align: right">

CHARLES MATTESON,
JOHN H. STINESS,
P. E. TILLINGHAST,
GEORGE A. WILBUR,
HORATIO ROGERS,
WM. W. DOUGLAS.