**RHODE ISLAND DEPARTMENT OF MENTAL HEALTH, RETARDATION, AND HOSPITALS**

v.

**John DOE.**

**No. 86-302-M.P.**

Supreme Court of Rhode Island.

Nov. 18, 1987.

Deborah Phee Clarke (MHRH), Cranston, for plaintiff.

Peter N. Dennehy (Mental Health Advocate), Cranston, Ruth A. Glassman, Providence, for defendant.

OPINION

MURRAY, Justice.

This matter is before the court on the petitioner's writ of certiorari to review an order by a justice of the District Court, which order certified the hospitalization of the respondent and directed that hospitalization be provided in a designated out-of-state, private psychiatric facility.

The petitioner, the Rhode Island Department of Mental Health, Retardation, and Hospitals (MHRH), initiated an action for the involuntary civil commitment of respondent, John Doe, pursuant to the provisions of G.L. 1956 (1984 Reenactment) chapter 5 of title 40.1, the Mental Health Law. The respondent, John Doe, is a deaf, mentally disabled individual who was twenty-two-years-old at the time of the hearings on the petition below.

This court granted certiorari following hearings on the petition for involuntary civil commitment of respondent, held on February 3, 1986, and February 17, 1986,

before a justice of the Rhode Island District Court. Following the presentation of evidence, the judge concluded that the requirements of the Mental Health Law had been met and ordered involuntary certification of respondent. The judge further ordered that respondent be detained at the Institute of Mental Health (IMH) only until arrangements were secured to commit respondent to Forest Hospital, Des Plaines, Illinois.

In response to this adjudication, petitioner MHRH, on February 25, 1986, filed a notice of appeal seeking to stay the District Court order. At the hearing on March 10, 1986, petitioner apprised the judge that the cost of Forest Hospital was at that time $415 per day, plus additional charges for psychiatric services, lab work, testing, medical services and medication. In addition petitioner informed the judge that out-of-state treatment alternatives were being investigated.

The motion for stay was denied by the District Court, and further, the justice decreed that any delay in the appeal of the order would be harmful to respondent and should not occur. On March 10, 1986, this court preliminarily granted petitioner's motion for a stay of the order. On May 15, 1986, this court granted petitioner's motion for stay of order pending appeal.

Thereafter, MHRH petitioned this court pursuant to a writ of certiorari to review the District Court justice's order requiring petitioner to place respondent in a particular out-of-state psychiatric facility. On July 17, 1986, we granted petitioner's writ of certiorari.

The record before us indicates that John Doe was abandoned by his mother at the age of two years and has been a ward of the state for the last twenty years. He is deemed to be congenitally deaf and communicates through American Sign Language (ASL). The record recites that John Doe demonstrates profound mental disability and personality disorder and has a history of psychotic symptoms and suicidal tendencies. Between 1965 and 1984 John Doe was in the custody of the Department of Children and Their Families and was placed in approximately three foster homes; four out-of-state institutions/schools; the Behavior Research Institute, Providence, Rhode Island; the Rhode Island School for the Deaf; and the Rhode Island Children's Center. The respondent's successive confinements in various therapeutic settings ultimately have yielded no positive results. The respondent engaged in deviant activities including assaults, destruction of property, infliction of wounds on himself, and other antisocial behavior which prompted his discharge from various residential facilities. The representatives of MHRH and the independent psychiatrist appointed by the court concluded unequivocally that respondent must be institutionalized. Consequently the District Court justice found, relying on evidence, observation, and testimony, that respondent was incompetent and that by "clear and convincing evidence the respondent is in need of care and treatment in a facility and is one whose continued unsupervised presence in the community, would, by reason of his mental disability create a likelihood of serious harm to himself and others, and that all alternatives to certification have been investigated and deemed unsuitable."

The focus of contention in this matter is the further order of the judge that stated:

"It is further ordered that the head of this institution detain respondent for so long as it would take to investigate the transfer of this patient to the Forest Hospital, where, as a result of the testimony, the Court has heard from Doctor Klein and Doctor Bauermeister that respondent can be treated. Both of these psychiatrists have advised the Court that treatment in this facility, even although this hospital has made, I think, sincere efforts to satisfy the needs, the psychiatrist's testimony is that it is not possible in this institution. Therefore, the Court will order the investigation be made as quickly as possible to see to the funding and transfer of this patient to Forest Hospital."

The petitioner, MHRH, contends that the judge exceeded his authority in ordering that petitioner provide funding and trans-

fer respondent to an out-of-state private psychiatric hospital. We find petitioner's contention to have merit.

█ Focusing upon the merits of the case, we are mindful that this court's review by certiorari of the judgment rendered by the trial judge is limited. *Thompson v. Town of East Greenwich*, 512 A.2d 837, 841 (R.I. 1986). Our task in determining whether the trial judge misconstrued the statute is to examine the record concerning whether any competent evidence exists to support the decision and whether the decision is affected by any errors of law. In conjunction with the aforementioned precept, since we are confronted in this matter with a question of statutory interpretation, this court's duty in construing a statute is to ascertain the intention behind its enactment and to effectuate that intent whenever it is possible and within the competence of the Legislature. In order to determine the legislative intent, we examine the language, nature, and object of the statute. 512 A.2d at 841 (citing *Howard Union of Teachers v. State of Rhode Island*, 478 A.2d 563, 565 (R.I. 1984); *Dunne Leases Cars & Trucks, Inc. v. Kenworth Truck Co.*, 466 A.2d 1153, 1156 (R.I. 1983); *Randall v. Norberg*, 121 R.I. 714, 717, 403 A.2d 240, 242 (1979)).

The focal point of controversy in this action is § 40.1–5–8 (10), which states inter alia:

"the court at a final hearing finds by clear and convincing evidence that the subject of the hearing is in need of care and treatment in a facility, and is one whose continued unsupervised presence in the community would by reason of mental disability create a likelihood of serious harm, and that all alternatives to certification have been investigated and deemed unsuitable, it shall issue an order committing the person to the custody of the director for care and treatment or to an appropriate facility. In either event and to the extent practicable, the person shall be cared for in a facility which imposes the least restraint upon the liberty of such person consistent with af-

fording him the care and treatment necessary and appropriate to his condition."

█ In particular the parties dispute the meaning of the word "facility" and the scope of "an appropriate facility" as worded in the statute. In the definition set forth in § 40.1–5–2(3), "facility" means a

"state hospital or psychiatric inpatient facility in the department, a psychiatric inpatient facility maintained by a political subdivision of the state for the care and/or treatment of the mentally disabled, a general or specialized hospital maintaining staff and facilities for such purpose, any of the several community mental health services established pursuant to chapter 8.5 of this title, and any other facility within the state of Rhode Island providing inpatient psychiatric care and/or treatment and approved by the director upon the application of said facility."

From a review of the language in § 40.1–5–8(10) read in conjunction with § 40.1–5–2(3), it is our considered judgment that the Legislature intended to limit the commitment of a patient to a facility located within the State of Rhode Island or to a facility approved by the director. Accordingly, the trial judge exceeded his authority in ordering petitioner to provide funding and to transfer respondent to Forest Hospital. We acknowledge that the order by the judge was a sensitive response that reflected the sincerity of the parties in their concern for John Doe's welfare.

This court's interpretation of § 40.1–5–8(10) is dictated by the underlying issue which requires consideration when a judge orders commitment of a patient to a particular facility. A consequence of the order is the expenditure of public funds. Attention must be paid to the ramifications of such expenditure upon the budget appropriation made by the Legislature to the state agency (MHRH).

We have clearly stated our position concerning this issue, holding that although a court may refer a juvenile to the appropriate state agency for treatment, the court does not have the authority specifically to select a given facility. *In re John Doe*, 120

R.I. 885, 390 A.2d 390 (1978). This case involved a troubled juvenile who invariably failed to improve his wayward and delinquent behavior in any but the most restrictive setting. The judge ordered MHRH to place the juvenile in a facility in Connecticut. The director, citing lack of funds, refused to comply with the order and consequently was held in contempt of court. We quashed the decree and remanded the case to the Family Court.

In our determination we recognized the established right set forth in the statute that provides "[a]ny person who is a patient in a facility pursuant to this chapter shall have a right to receive the care and treatment that is necessary for and appropriate to the condition for which he was admitted or certified and from which he can reasonably be expected to benefit." Section 40.1-5-9.

■ Observations by psychiatrists and psychologists and the philosophy of Chief Justice Burger of the United States Supreme Court were cited in examining the highly debatable efficacy of psychiatric intervention for behavior problems. *In re John Doe*, 120 R.I. at 890–93, 390 A.2d at 393–95. Absent cogent evidence to demonstrate the effectiveness of therapy and giving requisite consideration to the available or appropriated funds, this court found "no basis to determine that there is a constitutional right which would require the [L]egislature or the director [of MHRH] to provide such services at unlimited annual expense for an individual whose condition may or may not be effectively improved thereby." 120 R.I. at 893, 390 A.2d at 395.

Further, it was reasoned,

"where a court may order a large sum to be expended, particularly if it should require transfers from other items in a comprehensive budget, it is impossible to perceive the ramifications of such a decision. An agency such as MHRH has the responsibility of allocating scarce resources among myriads of competing requirements and is constituted to perform such a function. A court is simply not constituted by its inherent nature to achieve the required breadth of focus.

For this reason, the General Assembly in § 40.1-7-5 placed the responsibility for development of the public policy and programs related to the needs of emotionally disturbed children in the director of MHRH, rather than in a court." *Id.* at 895, 390 A.2d at 396.

In the case at bar, the facts disclose a similar, tragic pattern of failed confinements in various therapeutic settings in which the respondent, John Doe, resided. Doctor Farrell Klein, a staff psychiatrist at the IMH, stated in the application for civil court certification that respondent had made several suicidal gestures and has been saying he is God and is afraid the devil will kill him very soon. Subsequently, at the February 17 hearing, Dr. Klein testified that his opinion had strengthened during the time following the February 3 hearing, agreeing that respondent's mental disability was of psychotic proportions. In addition, the court, pursuant to § 40.1-5-8(5)(a), ordered respondent examined by Dr. Martin Bauermeister, an independent psychiatrist. His diagnostic impression noted that respondent shows the hallmarks of institutionalization, adding that an unfortunate result of never having formed any type of human attachment is the absence of normal social and moral development. Doctor Bauermeister concluded that deinstitutionalization is not an option, noting respondent's failure in any but the most restrictive settings. Further, he joined respondent's other physicians in describing respondent's psychosis as "atypical." Doctor Bauermeister suspended judgment in making a specific diagnosis of respondent's psychosis, thus complicating the question of an appropriate therapeutic facility.

■ Further complicating this matter is the fact that respondent is deaf. Both Dr. Klein and Dr. Bauermeister agree that access to communication with proficient signers is essential. Doctor Bauermeister stated that the Forest Hospital in Des Plaines, Illinois, offers a most suitable program to respond to the demands of respondent. However, Doctor David Askew, Clinical Administrative Officer at the IMH, testified

concerning the efforts presently being made to accommodate respondent's special needs. Doctor Askew acknowledged that the services available to respondent were not as entirely sufficient as one might desire, although, he did indicate that efforts were being made to provide additional interpreters and counseling to improve respondent's rehabilitative program. The court recognizes respondent's constitutional right to those minimal basic facilities and amenities needed on the part of those who are committed for purposes of protecting society against their antisocial acts, as well as for other purposes. "Nevertheless, the rehabilitiative goal does not mandate that antisocial behavior be treated without regard to the expense or the availability of appropriated funds in a context, where as here, according to prior psychiatric evaluations, the prognosis is guarded and the outcome is doubtful." *In re John Doe,* 120 R.I. at 894, 390 A.2d at 395.

■ Presumably, each person committed to the custody of the state, pursuant to the Mental Health Law, is in need of special care and treatment. With all due respect to the present mental-health programs available in the State of Rhode Island, it is not inconceivable that a more appropriate facility or effective program exists elsewhere to treat patients in custody of MHRH. To engage in the task of deciding what constitutes a more suitable program or more appropriate facility for mentally disabled patients is not the domain of the court. The legislative intent is imperate as to the MHRH and does not envision an implosion of the adopted state budget by judicial intrusion. The setting of priorities among those who are deemed to be suitable candidates for treatment is most suitably performed by the administrative agency rather than by the court. *Id.* at 895, 390 A.2d at 396.

The MHRH would also be confronted by this court's ruling that "[g]enerally the authority of a public official to expend public funds or to bind the government which he represents by contract, express or implied, is dependent upon the existence of a valid appropriation by the Legislature." *Id.* at

896, 390 A.2d at 396. Also, we have ruled that "neither the General Treasurer nor any executive officer of the State can incur any debt which will bind the State, and so become a State debt, except insofar as his action creating it is authorized by law." *Id.* at 896, 390 A.2d at 396–97 (quoting *In re the Incurring of State Debts,* 19 R.I. 610, 611, 37 A. 14, 14–15 (1896). The director of MHRH has the responsibility to be vigilant to the needs of each patient while exercising parsimonious discretion in expending money budgeted by the Legislature. The annual budget adopted by the Legislature is in statutory form and has all the force of law. *In re John Doe,* 120 R.I. at 894, 390 A.2d at 396.

■ Thus, the District Court exceeded its authority in ordering the respondent to an out-of-state private psychiatric hospital. "Facility" and "a more appropriate facility," as set forth in §§ 40.1–5–8(10) and 40.1–5–2(3), are interpreted to mean a facility located within the State of Rhode Island or a facility approved by the director. We do not reach the issues further raised in the respondent's brief.

For the reasons stated, the petitioner's petition for certiorari is granted in part and quashed in part. The order of the District Court committing John Doe to the custody of MHRH is affirmed. The further order of the court directing that hospitalization be provided in a designated out-of-state facility is quashed.